# NICKLE *v.* BURNETT.

[In Banc. No. 21058.]

1. PARENT AND CHILD. *Right of father to custody of child defined.*
   The father has the right to the control and custody of his child, unless he has forfeited this right by immoral conduct, or by an abandonment of the child.

2. PARENT AND CHILD. *Custody of child by another held not to show abondonment by father.*
   The mere fact that others may have had for a time the custody and control of a child and may have supported it for a time, and may have formed an affection for it, does not show an abandonment by the father or parent, and does not warrant the court in denying the custody to a parent who is a suitable person to have custody and control.

3. PARENT AND CHILD. *That another may be able to give child better advantages does not deprive parent of right to custody.*
   The mere fact that one party, not a parent, may be able to give the child better educational and social advantages than the parent, does not warrant the court in depriving the parent of custody of his child.

Appeal from chancery court of Panola county.
HON. JAS. G. McGOWEN, Chancellor.

Suit by Miss Tecoa Burnett against R. C. Nickle for the custody of a child. Decree for plaintiff, and defendant appeals.

*W. J. Stone,* for appellant.

This case is one of almost every-day occurrence. Here we have a clean-cut contest for the custody of a child between the father of the child and a maiden aunt. Let me say in the beginning that we are fortunate in this argument in being able to say that as far as moral conditions are concerned there is no contest; it being

shown and admitted without contradiction or hesitation that the moral atmosphere surrounding the boy in the hands of either one of these parties is all that could be desired. We might go to great length in this case in commenting upon the testimony, showing that our client had never been in the slightest degree remiss in his duty and was shown to be absolutely entitled to his child, but the chancellor has made a positive finding on the only essential question bearing on this case, and we take it that those findings of fact, have the force of a jury verdict and must stand; in fact, we thoroughly agree with the findings, and submit that no other findings of fact could have been made on this record. The point is that we agree with the findings of fact, and are taking the position in this court that on the findings of fact, the chancellor's decision as to the custody of the child is absolutely wrong and without foundation. In the judgment the court says, first, the father of the boy, Karl Nickle, has not abandoned the child; also, second, he is not shown to be unfit or incapable as the custodian of the child, Karl Nickle. Now, under the unbroken line of decisions since the famous Bains-Hibbett case, the above two findings necessarily give the custody of a father's child to the father. The fact that the court further finds that there is a strong tie of affection between the aunt and the child, and that the aunt is able to provide for the child, and that the court feels that the schools in Courtland, Mississippi, are possibly a little higher advanced than the schools in the village of Hughes, Arkansas, do not detract from the binding force of the above finding. Our law is and we venture that it will ever be that so long as a father has not abandoned his child and is not an unfit or incapable custodian, then no further questions are asked but he is given the child as against every other person on earth. If he has abandoned the child to the extent that the interest of the child will be sacrificed by letting him

have the child back, or if he is shown to be unfit or incapable by reason of his morals, or his poverty, or his health, or for any one of a hundred reasons, then there is opened up to the chancellor a wide field for the exercise of a wise discretion; but we take the position that when the chancellor finds that the father has not abandoned the child and further finds that he is not unfit or incapable that the door of inquiry and controversy is forever fastened, and he is absolutely entitled to the possession of his child. This is our case in a nutshell, and we do not propose to cite any other case than the famous case of *Bains* v. *Hibbett,* a case laboriously considered thru many months by this honorable court, and the decision in which will be considered a classic in legal literature for generations yet to come. The case at bar has many of the exact essential features of the *Bains* v. *Hibbett case;* a mother dying and leaving an infant; the heartbroken parent acceding to the wishes of a grandparent in old age; the loving care given by the grandparent and maternal aunts; the father's absence in another state carving out his fortune; the high standing intellectually and morally of both contending parties; the claim against the father that he had abandoned his child, the conclusive repudiation by the testimony of this claim; the undoubted and unselfish affection of the aunt for the child; every one of these commanding features are present in the case of George Bains and Clifton Nickle, as brought out by the cold record and as verified by long acquaintance with the facts.

As the chancellor's finding on the facts in this case is so clear-cut and positive, I will refrain from commenting, except to say that not only are these findings clearly the product of the testimony but inevitably so from the overwhelming, in fact unanimous, voice of the testimony. In fact, there is not a word to be said in favor of the appellee having the custody of this child except as a tribute to her unselfish and absolute devo-

tion to the child, this and nothing more. Here, as in the case of Mrs. Land and Mrs. Hibbett, there is all that could possibly be desired in affection; but this must yield to the paramount right of a father who is responsible for his son in every way, both for his ordinary needs and for his approaching duties of citizenship.

The case has been fully heard and the learned chancellor granted the custody until July, 1920, to the appellee and ordered the case set down on the docket of the July term, 1920 "for final decree as to permanent custody of the child, Karl Nickle." Therefore, we say that the hearing having been completed that we are entitled to a decree in this court for permanent custody of the child, Karl Nickle, to take effect at once.

The *Bains v. Hibbett* case referred to is reported at 78 Miss. 695, and 29 So., page 80.

*L. B. Lamb,* for appellee.

I respectfully submit that the conduct of the father in this case constituted an abandonment. He complied with none of the duties of a father during the five years next preceding the trial below. He was wealthy during all those years; he lived within less than one hundred miles of Courtland, Mississippi, where Karl was and yet did not support him nor did he visit him or write to him or communicate with him by telephone. If appellant had the affection for his boy that he should have, before he would be entitled to have him torn from the woman who is to the boy a mother, he certainly would not have let the years and years pass without seeing him. There was no sort of reason or excuse offered by appellee for not visiting his boy during these years. He was financially able to go when he wished; there was no reason of any kind to justify his neglect. He not only did not visit or communicate with his child, but he did not sup-

port him. When appellee was on her way to Hughes with Karl in the Summer of 1919 to visit the father, appellant, she had Karl's adenoids removed in Memphis, paid the bills herself and appellant never so much as thanked her for what she had done. Yet he is and was worth much more than she was worth.

If appelant had possessed that unselfish love and affection for Karl that he ought to have to justify a court in taking the boy from appellee he would not have been guilty of a failure to at least thank Miss Burnett for what she had done and expended for his boy. Besides failing to thank her or offer to reimburse her for what she had paid out for his boy but recently, he in his own home forcibly took the child from her. These acts are indications of the character and disposition of the man.

Counsel refers to the case of *Hibbette* v. *Baines,* 78 Miss, 695, to support the right of the father to a decree in this case on the hearing below to the custody of the child in controversy. But the facts in that case and in the case at bar are very, very different. Mr. Baines had contributed to support of his children regularly, even when a bankrupt. He visited them regularly and did his full and whole duty as a parent during the whole time as disclosed by the record in that case. In this case Mr. Nickle did not do what Mr. Baines did, or apapproximate it. Mr. Nickle is and has been wealthy, yet did not contribute to the support of his only child by his first wife except in trivial sums; he did not visit him or write to him, yet there was nothing to keep him from doing that frequently.

The court, of course, is familiar with the facts in the Hibbette-Baines case, and will see from the record in this case the vast difference in the conduct of the two men. Then, while Mr. Baines had also married again, there were no children by the second wife. In this case

there are now two children of the second marriage of Mr. Nickle.

The guiding star in all cases of this character is the best interest of the child. That is, if it would be better for Karl to remain where he is and has been for most of his life, then, although the court should find that Mr. Nickle has not so conducted himself as to cut himself off from the right of custody, he will be left where he is, at least until his character is more solidly formed. .

It is not claimed that the condition of Karl would be improved in any way. The record shows, I respectfully submit, that Karl is better off where he is and has been than he would be with his father at Hughes.

I beg to refer the court to the cases of *Coocke* v. *Hannum*, 39 Miss. 423; *Maples* v. *Maples,* 49 Miss. 393; *McShan* v. *McShan,* 56 Miss. 413; *Fullilove* v. *Fullilove,* 62 Miss. 11.; *Gildwell* v. *Morris,* 89 Miss. 82. The court below did not make a final decree, but provided that until July, 1920, term the custody of the child should remain in Miss Burnett, appellee. I submit that this appeal is premature and should be dismissed, when a final decree is rendered at July, 1920, term an appeal could then be prosecuted to this court which would settle this case.

In the case of *Wallace* v. *Wallace,* 93 Miss. 278, a decree somewhat similar, temporary in its nature, was affirmed. This case involves the destiny of Karl, and I know the court will give the attention to the record that this character of case deserves and I will not worry the court further.

In conclusions will recapitulate my contentions as follows: First, the appeal is premature and should be dismissed. Second, if the appeal is entertained, then I submit that the record shows an abandonment of the child by his father and that the court below erred in not so finding. Third, that, if appeal is entertained, and

no abandonment is shown, then the decree of the court below should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellee filed a bill in the chancery court for the custody, control, and possession of Carl Nickle against his father, Clifton Nickle, in which she alleged that the said child is about nine years of age, and that she had administered to his necessities since he was less than one year old; that she had supported him during this time; that she was the sister of the mother of the child, the mother dying when the child was about five months of age; that she had the custody of said child until recently, when Clifton Nickle, the father of the child, forcibly took the child from her; that at the time she took the child in its infancy the said Clifton Nickle by his conduct, acts, and statements assured the relator that she would never be disturbed in the possession of the said child. She also alleged that the father was an unsuitable person to have charge of said child; that he is harsh and profane, and conducts himself in a manner unbecoming a father in the presence of a son; that the relator is able and willing to rear said child, and prays for the possession, custody, and control of said child.

The appellant denied that he had ever abandoned the child, denies that he has not supported him, denies the allegations with reference to his unfitness to have and rear the said child, and denies that he unlawfully took possession of the said child, but admits the allegation that the relator loves the child, and avers that he has the deepest affection for his child, and that it is right and his positive duty for him to have the custody and control of the child.

The testimony shows that the mother of the child, who is the sister of the appellee and wife of the appel-

lant, died when the child was about five months old; that the mother and father of appellee, the grandmother and grandfather of the child, and the appellee were living together, and that when the child's mother died the appellant left the child with its aunt, grand father, and grandmother, where it has remained until a few weeks before the institution of the suit. In the meantime the appellant had married, and after his marriage continued until the death of the grandparents to leave the child with them. When the grandfather and grandmother both died the appellant informed the appellee that he was going to take his child home. Appellee fainted, and appellant left the child there for some time thereafter, but, later, when she visited him in the state of Arkansas, he informed her he would not permit her to carry the child back to her home. The appellant has two children by his second wife, and both he and his wife testified that they desired Carl, the child in this suit, to be reared with his two sisters, and that they were amply able to care for and educate Carl.

The proof abundantly shows that appellant and his wife are people of good character and able to care for the child and give him proper attention. Likewise the proof shows that the appellee is a person of good character and ample means to take care of and rear the child.

The court in its decree found as a fact that the father had not abandoned the child, and further that it was not shown in the proof that he was unfit or incapable as custodian of the child, but recited that, on account of the ties of affection that now exist between the relator and the child and that the relator was able in every way to provide a good home and better educational advantages for the child at present, the appellee, the aunt, should have the custody of the child until the July term, 1920, and that the case be set for that

time for final hearing as to the permanent custody of the child, and granted an appeal from the said decree. The situation presented is one of the tragedies flowing from circumstances of this kind where the affections of the aunt have grown and entwined themselves around the child.

We think the proof fails to show any abandonment by the father, and that his leaving the child in the custody of the relator and her mother and father was prompted by feelings of consideration for the child and for the grandparents, and not prompted in any way by any lack of affection or consideration for the child.

"The very tenderness and silence and awful sanctity of that scene—the last interview between the husband and wife—would make it doubly hard for the husband to express any dissent, if he felt it, from her expressed wishes. The cold processes of reason, proper enough as tests of conduct in the ordinary transactions of life, are not the alembic by which to try the reasonableness of conduct in the pain and passion of such an hour." *Hibbette* v. *Baines*, 18 Miss. at page 721, 29 So. at page 87, 51 L. R. A. 839.

The present case is very much like the Hibbette v. Baines Case in all of its aspects. The chancellor having found, and necessarily must have found from the evidence, that the father had not abandoned the child, and that he was a suitable person to have the custody and control of the child, we think the father had the absolute right to the custody and control of the child. The case is controlled by the Hibbette v. Baines Case, from which we quote the following:

"Undoubtedly, the father has primarily, by law as by nature, the right to the custody of his children. This right is not given him solely for his own gratification, but because nature and the law ratifying nature assumes that the author of their being feels for

them a tenderness which will secure their happiness more certainly than any other tie on earth. Because he is the father, the presumption naturally and legally is that he will love them most, and care for them most wisely. And, as a consequence of this, it is presumed to be for the real interest of the child that it should be in the custody of its father, as against collateral relatives, and he, therefore, who seeks to withhold the custody against the natural and legal presumption, has the burden of showing clearly that the father is an unsuitable person to have the custody of his child, or that, however moral a man may be, he had abandoned his child, contributing nothing to its support, taking no interest in it, and permitting it to remain continuously in the custody of others, substituting such others in his own place so that they stand *in loco parentis* to the child, and continuing this condition of affairs for so long a time that the affections of the child and of the foster parents have become mutually engaged to the extent that a severance of this relationship would surely result in destroying the best interest of the child. In such case as this the law, and it may well be said nature, too, denies to the father the custody of the child, but the denial is based, not at all on any contract, but entirely and solely upon the situation as above stated, following the abandonment of the child by the father. There is much loose talk in the books about the best interests of the child, and more as to the right of the father. In the effort to escape from the arbitrary rule laid down by the common law as to the father's right, the danger is, lest the pendulum swing too far, under modern decisions, the other way; and too much disposition is manifested in some cases to consult not the permanent well-being of the child so much as its immediate enjoyment; to stand, not at the center of the whole circumference of the facts making up the life of the child from childhood to man-

hood or womanhood, but in that segment of those facts relating merely to what will make the child happy at the age he may be when the custody is determined. Parental authority and affection are not antagonistic to filial obedience and happiness. They are reciprocal and correlative." *Hibbette* v. *Baines,* 78 Miss. 703, 704 29 So. 81, 51 L. R. A. 839.

The court in that case adopted the law as announced in *Weir* v. *Marley,* 99 Mo. 494, 12 S. W. 798, 6 L. R. A. 672, and enters into an elaborate review of the authorities pertaining to such controversies, and then sums up the situation in the following words:

"The horizon which bounds the child of ten or thirteen is not the horizon the whole perspective of which is necessary to take into view in determining who shall have the training and character building of children. The vision of the little ones of ten and thirteen sees nothing beyond the horizon bounding those years. They cannot balance the advantages and disadvantages of different custodians, so as to correctly determine which one will guide it best, and fashion it most wisely into the make-up of perfect manhood and womanhood." 78 Miss. at page 721, 29 So., at page 87, 51 L. R. A. 839.

We think, as against all save the mother, the father has the supreme right to the control and custody of his child unless he has forfeited this right by immoral conduct, or by an abandonment of the child, and that the mere fact that the affections of other people have attached to and grown for the child, and that they may have had temporary custody of it, under circumstances not amounting to abandonment on the part of the parent, does not warrant the court in depriving the parent of his child or children. The proof shows that at the home of the father there are adequate advantages, social, religious, and educational, for a child of this age, and the mere fact that these advantages might be somewhat better at another point does not authorize

the court to interfere with the parent's right of custody and control of the child.

The judgment of the court will therefore be reversed, and decree entered here in favor of the appellant.

*Reversed, and decree for appellant.*