### STATE *ex rel.* GRAY *v.* HODGES.

### Opinion delivered March 3, 1913.

1. NOTARY PUBLIC—MINISTERIAL ACT—MANDAMUS.—The issuance of a commission to a notary public, appointed by the Governor under § 5743 Kirby's Digest, is a ministerial act, and mandamus is the remedy to compel its performance. (Page 273.)

2. CONSTITUTIONAL LAW—RULES OF CONSTRUCTION.—The Constitution must be considered as a whole and each part must be viewed in the light of other provisions relating to the same subject, as well as of the whole frame and purport of the Constitution. (Page 274.)

3. NOTARY PUBLIC—ELIGIBILITY OF WOMEN.—A woman is not eligible to hold the office of notary public, since she did not have the right at common law, and it has not been given by the Constitution. (Page 274.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

''The Governor may appoint a convenient number of notaries public for each county, who shall be citizens of the county for which they are appointed,'' etc. Kirby's Dig. § 5743. The only requirement is that they be citizens, and it is not necessary that one be an elector in order to be a citizen. 6 Am. & Eng. Enc. of L. 15; 21 Wall. (U. S.) 165, 169, 170; 24 Ark. 159.

Unless there is something in our Constitution to prevent, a woman may be a notary public in this State.

Since it is not an elective office but appointive, and there is no succession in the office, and no vacancies, section 3 article 19, of the Constitution does not apply, and no other provision appears to prevent. 92 Pac. 846. See also as supporting the view that a woman may be a notary public, 60 S. W. (Ky.) 186; 59 N. W. (Neb.) 803, 41 Neb. 535; 9 Fed. 78; 49 N. W. 868.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

Women were not eligible under the common law to hold the office of notary public, and since there is no express provision in our statutes giving them the right to hold the office, the prohibition in article .19, section 3 of the Constitution applies against appellant's contention. As to the point that a notary public is merely an appointive officer, and that there is no succession in the office, there is a legislative determination to the contrary. Kirby's Dig. § 5750. On the point that women are not eligible where there is no constitutional or statutory provision allowing it, see 6 L. R. A. (Mass.) 842, 843, 844; 32 L. R. A. (Mass.) 350; 41 L. R. A. (Ohio) 727; 20 L. R. A. (Tenn.) 311, 312; 22 Ky. L. Rep. 1169; 5 L. R. A. (N. S.) 416, note; *Id.* 415; 9 Col. 628, 21 Pac. 473.

HART, J. A petition for a writ of mandamus to compel the Secretary of State to issue a commission as notary public to Mary B. Gray was filed in the Pulaski Circuit Court. The petition states that Mary B. Gray is a citizen of Pulaski County and was appointed a notary public by the Governor of the State. That she applied to the Secretary of State to issue her a commission and that he refused to do so on the ground that she was a woman. The circuit court denied the petition for the writ of mandamus and the case is here on appeal.

Section 5743, Kirby's Digest, provides that the Governor may appoint notaries public. The issuance of the commission by the Secretary of State is a mere ministerial act, and mandamus is the proper remedy to compel its performance, provided the petitioner possesses the

qualifications to serve as a notary. 29 Cyc. 1372; 26 Cyc. 252.

A notary public is a public officer. *Sonfield* v. *Thompson,* 42 Ark. 46; 29 Cyc. 1069; Opinion of Justices, 73 N. H. 621, 6 A. & E. Ann. Cas. 283, 5 L. R. A. (N. S.) 415. This is conceded by counsel for appellant, but they contend that a woman is not prohibited by our Constitution from filling the office of notary public, and that she is a citizen within the meaning of section 5743, Kirby's Digest. Section 3, article 19, of the Constitution provides that no person shall be elected to or appointed to fill a vacancy in any office who does not possess the qualifications of an elector. Counsel for appellant contend that this section of the Constitution has reference solely to elective officers and has no application to the office of notary public. In making this contention we do not think that they have taken into consideration the other sections of the Constitution bearing on the question.

It is a cardinal rule of construction that the Constitution must be considered as a whole and to get at the meaning of any part of it we must read it in the light of other provisions relating to the same subject, as well as of the whole frame and purport of the Constitution. *Little Rock* v. *North Little Rock,* 72 Ark. 195.

Section 6, article 5, of the Constitution provides that certain named officers shall not be eligible to a seat in either house of the General Assembly. Notaries public are expressly excepted from the officers thus prohibited. Section 26, article 19, of the Constitution provides that militia officers, officers of public schools and notaries may be elected to fill any executive or judicial office. In the case of the *State* v. *Ashley,* 1 Ark. 513, the court said:

"There are two ways of imposing a constitutional restriction or limitation. The grant may contain negative words, denying in express terms the exercise of the power claimed or attempted to be usurped; or it may simply contain an affirmation, which amounts to as positive a negation of any other power upon the same subject, as if the grant itself had employed negative, and

not affirmative, words, in the declaration. The constitutions of the United States and of the States furnish satisfactory and conclusive proof of the truth and importance of the principle here stated. Indeed it will be found from an examination of those instruments that the usual and more general mode of imposing restrictions is by affirmative words, 'which in their operation imply a negative of other objects than those affirmed;' and in such cases a negative or exclusive sense must be given to the words, or they will have no operation at all.'' See also *Colby* v. *Lawson,* 5 Ark. 303.

It may be said that the purpose of section 26, article 19, was a declaration on the part of the framers of the Constitution that there was no incompatibility between the office of a notary public and the other offices named in the section, and executive and judicial offices. It must also be said, however, that to give this affirmation of the right of notaries to fill executive and judicial offices any operation it must be by way of excluding and denying all persons who are not qualified electors the right to hold the office of notary public. For none but qualified electors can fill executive and judicial offices. Our Constitution lays down that rule, and in the case of some officers adds further requirements. This view is greatly strengthened when we consider that, under the common law which was in force in this State at the time of the adoption of our Constitution, a woman could not hold a public office. Opinion of the Justices, 6 A. & E. Ann. Cas. 283, and case note. The *Atty. General* v. *Abbott* (Mich.), 47 L. R. A. 92; *Robinson's case,* 131 Mass, 376, 41 Am. Rep. 239. In the latter case the right of a woman to hold office was fully discussed, and the court, after citing and reviewing at great length the authorities bearing on the question, held that the political privilege of voting and holding public office was denied to women under the common law. Whenever our Legislature has intended to make a change in the legal rights or capacities of women it has used words clearly manifesting its intent and the extent of the change intended. Thus, it

will be seen the law of the State at the time of the adoption of the Constitution, the whole frame and purport of the Constitution itself and the general understanding and the practical construction given to the Constitution by the law makers all support the conclusion that women are not eligible to hold public office, and are inconsistent with any other conclusion. See Opinion of the Judges, 32 L. R. A. (Mass.) 350, and Opinion of the Justices, 5 L. R. A. (N. S.), (N. H.), 415.

It follows that if the petitioner had been issued a commission by the Secretary of State after her appointment by the Governor, she would have no constitutional or legal authority to exercise any of the functions of the office of notary public.

Therefore, the writ of mandamus was properly denied, and the judgment will be affirmed.