COKER v. FORT SMITH.

Opinion delivered February 18, 1924.

MUNICIPAL CORPORATIONS—ASSOCIATION WITH PROSTITUTES.—A municipal ordinance making it a misdemeanor for any male person over the age of 14 to ride or walk in the daytime or night within the city limits with any generally reputed prostitute is invalid, as in effect it deprives the prostitute of the right to reside in the city by depriving her of the privileges which give that right its value.

Appeal from Sebastian Circuit Court, Fort Smith District; *John E. Tatum,* Judge; reversed.

*T. S. Osborne,* for appellant.

It is beyond the power of the city council to enact an ordinance making it a criminal offense to be on the street with a prostitute. 45 Ark. 336; 250 S. W. 429.

*Geo. W. Dodd,* for appellee.

The ordinance is valid. Not only have municipal corporations in this State authority, under their general

powers, to enact such an ordinance but it is made their duty to enact such by-laws and ordinances as are necessary to suppress indecent and disorderly conduct and to punish all lewd and lascivious behavior on the streets and in other public places. C. & M. Dig., § 7494; 19 R. C. L. § 151; 71 Iowa, 87; 107 N. C. 962; 74 Ga. 516; 92 S. E. 1021.

SMITH, J. Appellant was tried and fined in the municipal court of Fort Smith on a charge of "being on the street with a prostitute." He appealed to the circuit court, and, on his trial there, was again found guilty and fined, and has appealed to this court.

At his trial in the circuit court an instruction was given, over his objection and exception, which reads as follows: "1. The court instructs the jury that, if you find from the evidence that the defendant, Troy Coker, in the city of Fort Smith, and within one year next before the bringing of this suit, being a male person over the age of fourteen years, was seen riding or walking, in the daytime or night, within the city limits, without there being any necessity therefor, with a woman known or generally reputed to be a prostitute or lewd woman, then you should convict the defendant."

This instruction appears to have been warranted under the ordinance of the city which appellant was charged with having violated. It reads as follows: "It shall be deemed a misdemeanor to do, or cause to be done, any of the following acts, and any person convicted thereof shall be fined not less than five nor more than twenty-five dollars: To keep a house of ill-fame or assignation house, to permit any house owned by him, her or them, or under his, her or their control, to be kept for the purpose of prostitution; to be an inmate of a house of ill-fame, or to be found in such house for lewd purposes; or for any woman of the town or any prostitute to walk the streets after nine o'clock at night, without having any lawful business or without any necessity therefor, or at any time to solicit any person on the street, or in any public place, to accompany them or to meet them at any place

for the purposes of prostitution; or for any male person over the age of fourteen years, who shall be seen riding or walking, in the daytime or at night, within the city limits, without there being any necessity therefor, with any woman known or generally reputed to be a prostitute or lewd woman.''

The part of the ordinance which appellant is charged with having violated is the last clause thereof. By his appeal he questions its validity.

The facts upon which the conviction was had are briefly these: Appellant was seen, near midnight, in an automobile with a woman who bore the reputation of being a prostitute. He drove the car in one direction, and, after a short detour, drove it down the same street in the opposite direction. The officers stopped the car, searched it for whiskey, but found none. Appellant was then arrested upon the charge stated. In his own defense he testified that he met the woman at a party, and was merely carrying her home.

It may be said that it was clearly within the power of the city council to enact most of the provisions of this ordinance, and their validity is not affected by what is hereinafter decided. Endlich on Interpretation of Statutes, § 538; Dillon's Municipal Corporations (5th ed.), vol. 2, § 647; McQuillin's Municipal Corporations, vol. 2, § 816, and supplementary volume 7, § 816.

But the question for decision is whether the clause reading ''or for any male person over the age of fourteen years, who shall be seen riding or walking, in the daytime or at night, within the city limits, without there being any necessity therefor, with any woman known or generally reputed to be a prostitute or lewd woman,'' is valid.

There are an almost infinite number of cases dealing with the authority of municipal corporations to enact ordinances of this character, and, after an examination of many of the cases collected in the annotated cases cited in the note to § 151 of the article on Municipal Corporations in 19 R. C. L., p. 844, we find the holding of these cases is there correctly summarized into a general

statement of the power of the municipalities in the enactment of such ordinances. It is there said: "A municipal corporation, under a general delegation of power, may enact ordinances to prohibit the keeping of houses of ill-fame and to punish the keepers thereof, and to punish any person found in or frequenting a disorderly house, leaving him to show, as a defense, if he can, that he was lawfully or innocently in the house. So also an ordinance forbidding owners of houses from renting them to others for the purpose of prostitution, or with knowledge that they were to be so used, is valid, and a municipal corporation may prohibit prostitutes from walking streets at night, except in case of reasonable necessity. Municipal regulations for the suppression of prostitution must, however, be reasonable. Ordinances have been held unreasonable, and consequently void, which declare that the owner or occupant of a house or room who permits single acts of illicit sexual intercourse shall be deemed guilty of keeping a house of ill fame, or which forbid any prostitute to reside in or stay in any house or room within the city, and forbid the renting of any such premises to a prostitute, without regard to its use, or which make it unlawful for any person to associate or converse with a prostitute upon any of the streets of the city, by day or by night, regardless of the subject and occasion of the conversation, or which punish as a crime the mere presence within or return to the corporate limits of a prostitute. The decisions in these cases fully establish the invalidity of ordinances which amount to an outlawry, or a denial of the right to life and liberty to any class of women, however abandoned, except so far as it may be in punishment of a specific offense. That is to say, women cannot be denied the right to occupy property and engage in lawful business by reason of any general bad character. But they may be subject to such police regulations as are reasonably necessary. So also the provisions for enforcing the regulations must be reasonable."

Among the annotated cases cited in the note is our own case of *Paralee* v. *Camden* (which will be again referred to), 4 Am. St. Repts. 35.

One of the best considered cases is that of *Dunn* v. *Commonwealth*, 88 Am. St. R. 344, 105 Ky. 834, 49 S. W. 813. In that case an ordinance which prohibited prostitutes from being on the streets of the city between the hours of 7 p. m. and 4 o'clock a. m. following, except in instances of reasonable necessity, was upheld as a valid exercise of the police power. The court said that the council had, no doubt, ascertained that the hours during which prostitutes were excluded from the streets was the favorite time for their business, and was therefore a proper ordinance to suppress the traffic whereby they earned their livelihood. The court further said: "We think this is a reasonable restraint, and it does not unreasonably abridge their personal liberty. By the terms of the ordinance they are allowed to go upon the streets if there is reasonable necessity for it. During the fifteen hours of the twenty-four these habitual offenders against the moral, social, and penal laws are permitted to go wherever they please upon the streets and alleys of the city, which affords them ample opportunity for healthful exercise, and of attending to their reasonable wants."

A very recent case on the subject is that of *Ex parte Cannon*, 250 S. W. 429, decided by the Court of Criminal Appeals of Texas. There an ordinance of the city of Texarkana, Texas, making it unlawful for a man to ride with, or walk along the street or to be together in a public place with, a prostitute, or to be found with a woman in a house of prostitution, or with a negro woman at her place of residence, unless he were a doctor, a deliveryman, a collector, or a police officer, was held violative of the provisions of the Federal and State Constitutions guaranteeing to every citizen the right of life, liberty and property. In that case the court quoted with approval from the decision of the Supreme Court of Missouri in the case of *Ex parte Smith*, 135 Mo. 223, 36 S. W. 628, 33 L. R. A. 606, 58 Am. St. Rep. 576, as follows: "This ordi-

nance is now attacked on the ground of its unconstitutionality, in that it invades the right of personal liberty by assuming to forbid that any person should knowingly associate with those who have the reputation of being thieves, etc. And certainly it stands to reason that, if the Legislature, either State or municipal, may forbid one to associate with certain classes of persons of unsavory or malodorous reputations, by the same token it may dictate who the associates of any one may be. But, if the Legislature may dictate who our associates may be, then what becomes of the constitutional protection to personal liberty, which Blackstone says 'consists in the power of locomotion, of changing situation, or moving one's person to whatsoever place one's inclination may direct, without imprisonment or restraint, unless by due course of law.' 1 Bl. Comm. 134. Obviously, there is no difference in point of legal principle between a legislative or municipal act which forbids certain associations, and one which commands certain associations. We deny the power of any legislative body in this country to choose for our citizens whom their associates shall be.''

Without further reviewing the decisions of other jurisdictions, it may be said that we have two decisions of this court which announce principles that are fatal to the validity of the portion of the ordinance under which appellant was convicted.

The first of these is *Buell* v. *State,* 45 Ark. 336. In that case the court held that a town council had no power to make it a misdemeanor for a prostitute to reside in or be found within the limits of the town. This decision was rendered in 1885.

The second case is that of *Paralee* v. *Camden,* 49 Ark. 165, which was decided in 1887, and in which it was held that a municipal corporation has no power to enact an ordinance punishing as a crime the mere presence in or return to the corporate limits of a prostitute, although the statute of the State authorizes municipalities to pass ordinances to punish persons for lewd and lascivious behavior in the streets or other public places, and to sup-

press bawdy and assignation houses and indecent and disorderly conduct.

It will be observed that both these cases were decided after the passage of § 7599, C. & M. Digest, which section of the Digest, together with §§ 7598, 7600, 7601 and 7603, C. & M. Digest, comprise § 9 of the act of March 9, 1875. Acts 1875, page 1.

The city could, no doubt, pass a valid ordinance prohibiting a prostitute from in any manner soliciting patronage in the streets, or at any other place, at any hour, and the city might, no doubt, prohibit the presence of a prostitute on the streets during such hours of the night as were apparently suitable for the solicitation of patronage; but the portion of the ordinance under review goes far beyond that. It, in effect, takes from the prostitute the value of the right to reside in the city by depriving her of the privileges which give that right its value. Under this ordinance no male person over the age of fourteen years, even though he were a near blood relative, could ride or walk with a prostitute within the city limits, without there being a necessity therefor. It is true, the ordinance does not make her exercise of such a right unlawful; but it, in effect, deprives her of this right by making it unlawful on the part of any male companion.

We think the portion of the ordinance under which appellant was convicted is too broad in its terms, and was beyond the power of the council to enact, and is therefore invalid.

The judgment of conviction must therefore be reversed, and the cause will be dismissed.

DISSENTING OPINION.

McCULLOCH, C. J. The two decisions of this court cited by the majority (*Buell* v. *State*, 45 Ark. 336; *Paralee* v. *Camden*, 49 Ark. 165) hold that, whilst municipalities may suppress bawdy houses by "prohibiting the keeping of such places, by forbidding the renting of premises for such purposes, and by other like prohibitions," the mere presence of a prostitute in the municipality cannot be declared to be a crime. That is the full

extent of those decisions. The sole effect of the other decisions cited by the majority is that prostitutes cannot be denied the right of existence—cannot be completely outlawed—because of their immoralities. The reasoning of all those cases is that prostitutes and their male associates can be restricted in their freedom except to the extent that such restriction does not interfere with their reasonable necessities of life.

The majority opinion overlooks the exception in the ordinance under consideration which makes it reasonable in its operation. It only applies where the conduct referred to is "without there being any necessity therefor." This relieves the ordinance of unreasonable oppressiveness. A fair interpretation of the language of the ordinance means a prohibition of association of men with prostitutes or reputed prostitutes on the streets or other public places when there exists no reasonable necessity therefor, and it seems to me that this does not unduly restrict liberty of action. The ordinance, in its application to prostitutes themselves, only prohibits them from walking the streets during the hours of the night, and then only "without having any lawful business or without any necessity therefor;" but men are prohibited, in the other part of the ordinance, from walking or riding with them at any time, day or night, without the existence of necessity therefor.

Fallen women are unfortunate, and deserve pity, but when they give themselves over to lives of prostitution they cannot expect, and are not permitted, the same degree of liberty as that enjoyed by other members of society. Protection of society at large demands restriction of the liberty of those who habitually lead lives of immorality. What can be more demoralizing in its influence than for men to be seen in public places in association with prostitutes, or reputed prostitutes? The influence from such practices is worse in the daytime than in the night, for it is then that they come into public notice, to the humiliation of virtuous women, and to the demoral-

ization of youth. However much we may pity fallen women, it is shocking to the sensibilities to witness the flagrant and needless association of men with them in public places.

The only effect of this part of the ordinance is to prohibit men from walking or "joy-riding" with prostitutes, and it seems to me to be a strange doctrine to say that it is beyond the power of this State to prohibit such conduct.

Mr. Justice HUMPHREYS concurs.