COLLINS *v.* HUMPHREY.

Opinion delivered April 21, 1930.

610

612

*Trieber & Lasley* and *Marsh, McKay & Marlin,* for appellant.

*Hal L. Norwood,* Attorney General, and *Walter L. Pope,* Assistant, *Thompson, Wood & Hoffman* and *R. E. Wiley, amici curiae,* for appellee.

HART, C. J., (after stating the facts). The constitutionality of the Severance Tax Law was sustained in *Floyd* v. *Miller Lumber Co.,* 160 Ark. 17, 254 S. W. 450, 32 A. L. R. 811, and that of the Income Tax Act of 1929 in *Stanley* v. *Gates,* 179 Ark. 886, 19 S. W. (2d) 1000. It will be noted from our statement of the case that our Severance Tax Law of 1923 provides for a distribution of the proceeds derived from the collection of the tax by crediting two-thirds thereof to a special fund created to be known as the Severance Tax Fund of the State of Arkansas, and to be wholly dedicated to the common schools of the State; and that the remaining one-third be allocated to the county from which such taxes are collected; and that the proceeds of the Income Tax Act of 1929 are to be paid into the State Treasury, and are to be distributed to the Charities Fund, the Common School Equalization Fund and the remainder to a special fund to be used solely for the purpose of reducing the State tax on property. Each of the acts provides for a continuing levy and collection of the tax for the purpose named.

It will also be observed that act 180 of the Acts of 1929, which creates the Arkansas Construction Commission for the purpose of providing adequate buildings for the Hospital for Nervous Diseases and for the Tuberculosis Sanitorium, diverts a part of the proceeds derived from the collection of taxes under the Income Tax Act of 1929 to the payment of the "State Construction Bonds" authorized to be issued by the Arkansas Construction Commission for the purpose of providing adequate buildings for the State Hospital for Nervous Diseases, and for the Tuberculosis Sanitorium.

Likewise Acts 266, 267 and 364 of the Acts of 1929 appropriated a part of the fund collected under the Severance Tax Law, respectively, to the support and maintenance of the State School for the Blind, State School for the Deaf, and State Board of Education. It is earnestly insisted that each of the acts, in so diverting the funds and appropriating them to another purpose, is in violation of article 16, § 11, of the Constitution, which reads as follows:

"No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose."

It is first insisted that the constitutional provision applies to taxes collected from all sources, and not merely to property taxes, and in this contention we agree with counsel for the plaintiff. The whole of article 16 of the Constitution is devoted to finance and taxation. It is universally recognized that the power of a State to tax exists as a necessary attribute of sovereignty, except as regulated and limited by the Constitution. The reason is that the State government could not exist or perform its functions without it. The Legislature has all the power with reference to taxation that the State has, and consequently has the right to classify taxes. Therefore the Legislature must decide when and how and for what

public purpose a tax shall be levied, and must select the subjects of taxation. Cooley on Taxation, 3d ed., p. 255.

It is a fundamental rule of construction that the Constitution should be construed as a whole, and the various provisions on the same subject must be read in the light of each other. *Little Rock* v. *North Little Rock,* 72 Ark. 195, 79 S. W. 785. When this is done, we can perceive no good reason why the restrictions of the section under consideration should be held applicable to property taxes alone. Such limitation could certainly do no good, and might lead to much confusion, and would inevitably lead to great uncertainty in providing for adequate revenue with which to administer the various departments of the State government. This view is strengthened when § 12, article 16, provides that no money shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with said appropriation. There is nothing in either section to indicate that the framers of the Constitution intended to limit or restrict the provisions to property taxes. On the other hand, when read in connection with the other provisions on the subject, we think it plain that the restriction of the section should apply to all subjects of taxation, and that it was intended that no money arising from a tax levied for one purpose shall be used for any other purpose.

It by no means follows, however, that counsel for the plaintiff are correct in their contention that this section controls the present case. The governing rule in cases of this sort is plainly and clearly stated in 37 Cyc. 1550, as follows:

"Taxes which are set apart by the Constitution of the State for particular uses cannot be diverted by the Legislature to any other purpose. But, subject to this limitation, it is in the general power of the Legislature, not only by appropriation bills, but also by directions incorporated in the revenue laws, to regulate the disposition which shall be made of the taxes collected both by the State agencies and by the local authorities."

An examination of the various decisions cited will show that they support the text. A review of our decisions will show that the court has been in accord with the view there expressed.

In *Dickinson* v. *Edmonson,* 120 Ark. 80, 178 S. W. 930, Ann. Cas. 1917C, 913, the court held that the common school fund was appropriated by article 14 of the Constitution on the subject of education, which is self-executing, providing for its creation and collection, and that no appropriation thereof was required by the General Assembly. Section 3 of article 14, which is now Amendment 9, provides for the levy of a millage tax when voted, and the section contains a proviso that no such tax shall be appropriated for any other purpose nor to any other district than that for which it was levied. It was this tax that the court had under consideration in *Dickinson,* v. *Edmonson, supra.* The section of the Constitution expressly states that the millage tax is to be levied upon the taxable property of the State. Hence it cannot be levied upon other subjects of taxation.

As said by the Supreme Court of Florida in *J. F. McKinnon* v. *Florida, ex rel.,* 70 Fla. 561, 70 So. 557, L. R. A. 1916D, p. 90: ''The school funds under our Constitution are to be regarded as a sacred trust; and the provisions of law safeguarding expenditures from such funds should be strictly construed, and the mandate of the Constitution enforced.''

As we have already seen, the power of the Legislature over taxation is unlimited except as restricted by the Constitution. Hence it could supplement the school fund derived from property taxes under the Constitution by appropriating a part of the proceeds derived from the Severance Tax Law; and the part so appropriated could be raised, lowered, or altogether withdrawn at the will of the Legislature. In other words, our Constitution has set aside certain revenue raised from property taxes to be held sacred for the benefit of common

schools, and the Legislature is without power to divert it. The fund here sought to be diverted from the common schools is not set aside by the Constitution for that purpose. The application of the taxes raised under both the Severance Tax Law and the Income Tax Act of 1929 is left entirely to the control of the Legislature; there being no restriction of their application in the Constitution.

The power of taxation and the power of apportioning taxes are identical and inseparable unless there is some constitutional restriction. In *Moore v. Alexander,* 85 Ark. 171, 107 S. W. 305, the court held that the capital fund collected pursuant to a special tax levied for the purpose of building a State Capitol could not be paid out, unless there had been a biennial appropriation in compliance with article 16, § 12, of the Constitution, notwithstanding it was beyond the power of the General Assembly to divert the fund collected therefor to use for any other purpose under article 16, § 11 of the Constitution. In that case the levy here was a continuing one, but the tax had already been collected. Hence it was held that the Legislature could not divert it, because it was money arising from a tax levied for one purpose, and could not be used for another purpose. Of course, if there is a surplus left after the purpose is accomplished, and the money is no longer needed for the original purpose, the Legislature may appropriate it to another public purpose. If the framers of the Constitution had meant that a tax levied for one purpose could not be used for another purpose, they would have so provided, as they did in the case of school taxes under article 14. By the use of the phrase "arising from a tax levied for one purpose" it was evidently intended that, when the tax was collected, it automatically belonged to the purpose for which it was levied, and could not thereafter be diverted by the Legislature to another purpose.

In other words, the Legislature has no power to divert a fund after the tax has been levied and collected,

and transfer it to another and separate purpose. If it could transfer the funds thus levied and collected, it might seriously embarrass the administration of the State government.

Counsel for plaintiff to some extent rely upon *School District No. 14* v. *School District No. 4*, 64 Ark. 483, 43 S. W. 501, where the court said that, under article 16, § 4 of the Constitution "funds raised and set apart under the law for a specific purpose should not be used for any other." This is, as we have already seen, because of the provision of the Constitution relating to the millage tax for the common schools.

Again, they rely to some extent on *Gray* v. *Matheny*, 66 Ark. 36, 48 S. W. 678, and *Lee County* v. *Robertson*, 66 Ark. 82, 48 S. W. 901; but it will be noted in each of these cases the court was discussing a levy made by the county court under legislative authority for county and State purposes. The power of the county court was exhausted when the levy was made, and, on that account, it could not thereafter divert the funds. As we have seen, the power of the Legislature is unlimited except as restricted by the Constitution.

It is not even essential or vital to an appropriation, that it should be for an amount definitely ascertained prior to the appropriation, since there is no requirement of that kind in the Constitution. In *Stanley* v. *Gates*, 179 Ark. 886, 19 S. W. (2d) 1000, the court reaffirmed the principle announced in earlier cases that, unless inhibited by some constitutional provision, the Legislature has full power over all matters of taxation and the collection and disbursement of taxes.

It is settled by the principles of law announced in *Grable* v. *Blackwood*, 180 Ark. 311, that the diversion of the funds from the purposes declared in the Severance Tax Law and the Income Tax Act of 1929, and the appropriation of them to a different purpose is not violative of the provisions of article 5, § 23 of the Constitu-

618

tion, as an appropriation by reference, which is prohibited by the section of the Constitution just referred to.

In *Skinner, Collector of Internal Revenue,* v. *Union Pacific Coal Co.,* 249 Fed. 152, the Court of Appeals of the Eighth Circuit had under consideration the construction of a section of the Federal Income Tax Act, which provides that the tax shall be levied "upon the entire net income arising or accruing from all sources during the preceding calendar year"; and it was held that the words "arising or accruing" meant the same as "received." Unless the word "arising" is used as the equivalent of "received or collected," it practically means nothing; and instead of providing that "no moneys arising from a tax levied for one purpose shall be used for any other purpose," the framers of the Constitution would have merely provided that no tax levied for one purpose shall be used for any other purpose. In short, there are "no moneys arising from a tax levied" until the tax is collected.

We have examined acts 180, 266, 267 and 364 of the Acts of 1929, and find each of them to be prospective in its operation. None of them attempt to divert funds or moneys which had already been collected from any subject of taxation to any other purpose than that for which it was levied and collected. The acts of the Legislature passing the Severance Tax Law and the Income Tax Act of 1929 levied the tax, but no moneys could arise or be in existence from the tax levy until the tax had been collected. It follows that the decree must be affirmed.

HUMPHREYS, J., (dissenting). I agree with the majority opinion in ruling that the restriction of § 11 of article 16 of the Constitution of Arkansas applies to all subjects of taxation, and that it was intended that no money arising from a tax levied for one purpose shall be used for any other purpose. This opinion is a result reached by giving the section in question a broad instead of a narrow construction. I think the same broad construction or interpretation given said section in order to

reach this conclusion should govern in ascertaining and determining what the makers of the Constitution meant or intended by using, in the latter clause of the section, the following language: "No moneys arising from a tax levied for one purpose shall be used for another purpose." In construing this language the majority opinion has departed from the rule of broad construction and adopted and applied a very narrow construction of the meaning of the words and the connection in which they are used in the sentence. The meaning attributed to this language by the majority opinion is that it only inhibits the diversion of money to another purpose than that for which it was levied, after the collection thereof. This is reading something into the section which is not expressed therein and which is not necessarily implied therefrom. The word "arising" in the sentence is a present participle and refers to money then collected or to be collected in the future as long, of course, as the purpose for which the levy was made exists. The broad, natural meaning of the language used in the sentence is that when a tax has been levied for a specific purpose the Legislature cannot thereafter (meaning after the passage of the bill in levying the same) divert the money arising therefrom to a different purpose. Any other construction would permit the Legislature to lay a tax upon the people for a certain purpose agreeable to them and provide for the collection thereof, but, before same had been collected, to divert it to some purpose not agreeable to them. This is the effect of the majority opinion. I cannot believe that it is a correct interpretation of the restriction. The construction is too narrow to give much effect to the language used, and wholly ignores the rules of grammar governing the sentence. I think the construction of the section contended for by appellant and adopted by me is fully sustained by reason in the cases of *Gray* v. *Matheny*, 66 Ark. 36, 48 S. W. 678, and *County Board of Education* v. *Austin*, 169 Ark. 430, 276 S. W. 2. For the reason stated I think act 189 of the Acts of 1929, in so far as it diverts

income taxes levied for one purpose to another purpose, and acts 266, 267 and 364 of the Acts of 1929 diverting the severance taxes to a different purpose from which it was levied are and were inhibited by article 16, § 11, of our Constitution and are void.

I am impelled therefore to dissent from the majority opinion to the effect that the acts in question are valid.