## Sɪɴǫᴜᴇꜰɪᴇʟᴅ *v.* Vᴀʟᴇɴᴛɪɴᴇ *et al.*

(Division B.   Jan. 26, 1931.)

[132 So. 81.   No. 29256.]

Collins & Collins, of Laurel, for appellant.

T. Webber Wilson, Roy P. Noble, and Ellis B. Cooper, all of Laurel, for appellees.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant, H. B. Sinquefield, filed a petition in the county court of Jones county for the custody of his two children, H. B. Sinquefield, Jr., aged five years, and Mary Elizabeth Sinquefield, aged four years, alleging that W. P. Valentine and Mrs. W. P. Valentine, grandparents of the children, unlawfully detained said children from the custody of their father without his consent, that petitioner had made demand upon W. P. and Mrs. W. P. Valentine to deliver said children to him, but they had refused to do so, and that they were depriving him of the custody of said children, and he prayed for a writ of habeas corpus to have said children produced and that they be turned over to him. The writ was duly issued and served, and the defendants filed answer admitting that W. P. Valentine had custody of said children, but alleging that the custody of said children was lawfully vested in W. P. Valentine by virtue of a decree of the chancery court of Jones county, and it was alleged that, upon filing of the decree, a bond, as guardian, was entered into as directed thereby, copy of which was filed with the answer; and it was alleged that, by reason thereof, said W. P. Valentine was in lawful custody of the children under a decree of the chancery court, and that the relief prayed for should be denied.

On the hearing it appeared that on September 10, 1930, W. P. Valentine presented a petition to the chancellor

of the district in vacation without notice to the appellant, H. B. Sinquefield, in which petition it was alleged that said Sinquefield was an unsuitable person to have the custody and control of his children. It was admitted that no service of summons or any notice was given to Sinquefield of the hearing before the chancellor. The chancellor granted the relief prayed for without the appellant, Sinquefield, being present or having had an opportunity to be heard.

The judge of the county court granted the relief prayed for in the habeas corpus proceeding, from which Valentine appealed to the circuit court, where the judgment of the county court was reversed and the case remanded to the county court, with directions to dismiss the petition. An order was entered in accordance with the directions dismissing the petition, from which Sinquefield again appealed to the circuit court, and from there to this court.

Section 1863, Code of 1930, chapter 266, Laws of 1922, reads as follows: "The father and mother are the joint natural guardians of their minor children and are equally charged with their care, nurture, welfare and education, and the care and management of their estates. The father and mother shall have equal powers and rights, and neither parent has any right paramount to the right of the other concerning the custody of the minor or the control of the services or the earnings of such minor, or any other matter affecting the minor. If either father or mother die or be incapable of acting, the guardianship devolves upon the surviving parent. Neither parent shall forcibly take a child from the guardianship of the parent legally entitled to its custody. But if any father or mother be unsuitable to discharge the duties of guardianship, then the court, or chancellor in vacation, may appoint some suitable person, or having appointed the father or mother, may remove him or her if it ap-

pear that such person is unsuitable, and appoint a suitable person.''

It will be seen from a reading of this section that nothing is said with reference to notice or service of summons to the opposing party in proceeding under this section, but such notice is required by the due process clause of the State Constitution and the Fourteenth Amendment to the Federal Constitution, and the provisions for summons are made in different cases in the chapter in the Code on process.

A chancellor could not act under this section so as to deprive a parent of the custody of his minor children without notice to such parent and a hearing and proof of the allegations of the petition.

In the case of Hibbette v. Baines, 78 Miss. 695, 29 So. 80, 81, 51 L. R. A. 839, it was held that, under a habeas corpus proceeding by the father for his children in the custody of collateral relatives, it will be presumed to be for the best interest of the children to be with their father, unless his unfitness or abandonment of the children be shown. It was also held that the father was entitled to the custody of his children unless and until he forfeited that right by his misconduct. In the course of the opinion in that case it was said: ''Undoubtedly, the father has primarily, by law as by nature, the right to the custody of his children. This right is not given him solely for his own gratification, but because nature and the law ratifying nature assume that the author of their being feels for them a tenderness which will secure their happiness more certainly than any other tie on earth. Because he is the father, the presumption naturally and legally is that he will love them most, and care for them most wisely. And, as a consequence of this, it is presumed to be for the real interest of the child that it should be in the custody of its father, as against collateral relatives, and he, therefore, who seeks to withhold the

custody against the natural and legal presumption, has the burden of showing clearly that the father is an unsuitable person to have the custody of his child; or that, however moral a man he may be, he had abandoned his child, contributing nothing to its support, taking no interest in it, and permitting it to remain continuously in the custody of others, substituting such others in his own place so that they stand in loco parentis to the child, and continuing this condition of affairs for so long a time that the affections of the child and of the foster parents have become mutually engaged to the extent that a severance of this relationship would surely result in destroying the best interest of the child. In such case as this the law, and it may well be said nature, too, denies to the father the custody of the child, but the denial is based not at all on any contract, but entirely and solely upon the situation as above stated, following the abandonment of the child by the father. There is much loose talk in the books about the best interest of the child, and more as to the right of the father. In the effort to escape from the arbitrary rule laid down by the common law as to the father's right, the danger is lest the pendulum swing too far, under modern decisions, the other way.''

This decision was followed in Nickle v. Burnett, 122 Miss. 66, 84 So. 138, in which it was held that the mere fact that some other party may have had for a long time the custody and control of a child and supported it, and may have formed an affection for it, does not show an abandonment by the father or parent, and does not warrant the court in denying to such parent, provided he is suitable, the custody of his child.

It will be seen from the statute above cited that the father and mother have equal rights as to the custody of their children, but, as between the father or mother, and other persons, the father or mother's right is superior to third persons, and they could only be deprived of the custody of their child by showing their un-

fitness to have such custody and control over it. It is not sufficient to have a mere petition alleging this, but notice should be given and opportunity to be heard, and the proof of such unfitness should be established in cases in which such notice has been given.

In Meyer v. Nebraska, 262 U. S. 390, 43 S. Ct. 625, 67 L. Ed. 1042, 29 A. L. R. 1446, the court held that the liberty guaranteed by the Fourteenth Amendment to the Federal Constitution denotes not merely freedom from bodily restraint, but also the right of the individual to contract, engage in any of the common occupations of life, and to acquire useful knowledge, to establish a home, to bring up his children, to worship God according to the dictates of his conscience, and to enjoy those privileges long recognized at common law as essential to man's happiness. This liberty, as stated, involves the power to give to children such training and education as in the parents' judgment is best for the children, so long as such training and education do not result in, or tend to develop, tendencies or traits dangerous to society. See Bartels v. Iowa, 262 U. S. 404, 43 S. Ct. 628, 67 L. Ed. 1047; Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary, 268 U. S. 510, 45 S. Ct. 571, 69 L. Ed. 1070, 39 A. L. R. 468; and 6 R. C. L., sec. 432. In Butler v. Perry, 240 U. S. 328, 36 S. Ct. 258, 60 L. Ed. 672, it was held that the due process clause of the Fourteenth Amendment to the Federal Constitution was intended to preserve and protect rights long recognized under the common law. See, also, Hebert v. Louisiana, 272 U. S. 313, 47 S. Ct. 103, 71 L. Ed. 270, 48 A. L. R. 1102.

The legislature of the state has not undertaken to authorize a hearing in which a person may be deprived of the custody and society of his children and their nurture and education without notice and a hearing thereon. It would be impossible for a legislature to so provide.

It would seem that the decisions of various courts under the due process clause of the Constitution indicate that such courts could not have proceeded without notice and hearing. A court cannot obtain jurisdiction to enter a decree until notice and an opportunity to be heard has been given.

Where a statute does not expressly provide for notice and a hearing, other statutes must be looked to, and the process authorized under them should be had before a decree or judgment can be entered. The legislature cannot dispense with such notice. The court, in all cases, must proceed upon notice and inquiry. It must hear before it can adjudge, and it must give an opportunity to persons affected by the judgment to be heard before it is rendered, or else the judgment does not affect them.

In addition to the authorities cited, see Coppage v. Kansas, 236 U. S. 1, 35 S. Ct. 240, 59 L. Ed. 441, L. R. A. 1915C, 960.

The plea in bar filed is insufficient to bar the appeal. The judgment adjudged the appellant not entitled to the custody of his children. The fact that the children may be in his temporary possession would not abrogate this adverse judgment, and certainly, without a reversal of the decree, he could assert no rights under it.

The judgment of the circuit court therefore will be reversed, and the judgment of the county court affirmed, and the cause remanded to said county court, with directions to issue the process to restore the custody of the children to the appellant.

Reversed and remanded.