Suzanne Marie CARROLL, Mother and
Next Friend of Tammy Johnette
JOHNSON and Jason Robin JOHNSON, Minors,
v. Sammy JOHNSON

77-292 & 77-293                    565 S.W. 2d 10

Opinion delivered April 24, 1978
(Division II)

*Shackleford, Shackleford & Phillips,* for appellant.

*Keith, Clegg & Eckert,* for appellee.

JOHN A. FOGLEMAN, Justice. These two appeals are consolidated by us because they involve the same legal questions relating to changes of the names of Jason Robin Johnson in 77-292 and of Tammy Johnette Johnson in 77-293. Both of

them are minor children, now aged seven years and thirteen years, respectively, of Suzanne Marie Carroll and Samuel W. Johnson, who were divorced sometime prior to November 22, 1972, when the mother married Dr. Peter J. Carroll. By separate ex parte petitions Mrs. Carroll, as mother and next friend of the respective minor children, asked that their names be changed to Robin Johnson Carroll and Tammy Johnette Carroll, respectively. Dr. Carroll joined in both petitions. It was alleged in each of them that the minor children had been cared for and supported by Dr. Carroll since he married the mother and that Samuel Johnson, the father, had failed and refused to support them. Both petitions were filed on February 8, 1977. Separate orders granting the prayer of each petition was filed on the same date, both reciting that the petition was heard on the preceding day. The only appearances noted were those of the petitioners and their attorneys. No notice was given to the father.

Subsequently, Samuel W. Johnson filed a motion in each proceeding to set aside the order previously entered, alleging that he had performed such obligations as he had for the support of the child involved and had been in constant communication with the child and its mother, that a proceeding for the adoption of the child had been filed in January, 1977 and heard on April 13, 1977, and that he had received notice of this proceeding and had been in constant communication with Mrs. Carroll and her attorney during the pendency of that proceeding but had not been given any notice whatever of the petition for change of name. He asked that the order in each case be set aside for three reasons, i.e.: want of notice to him; on account of the falsity of statements in the petition; and because the change was not in the best interest of the minor. He asserted that the entry of the orders without notice to him deprived him of due process of law under both the state and federal constitutions.

Mrs. Carroll, as mother and next friend of each of the minors, responded in both cases, denying the allegations of appellee's motion and asserting that appellee was not entitled to notice, that appellee had no standing to challenge the order of the court because he was not a party to the proceeding, and that appellee had not alleged or made a prima facie showing of a meritorious defense. The chancery

court held that due process of law entitled a natural parent to notice of the filing of a petition to change the name of his minor child and that, according to the opinion in *Clinton* v. *Morrow,* 220 Ark. 377, 247 S.W. 2d 1015, notice to a non-custodial parent and trial on the merits on such a petition is contemplated. On this holding, the orders were set aside.

Appeals were taken by Mrs. Carroll, as mother and next friend, on the grounds that due process of law does not require notice of the filing of a petition for name change of a child to its non-custodial parent, that the non-custodial parent cannot invoke due process notice requirements without showing that he was prevented from asserting a defense to the court's action by lack of notice and that appellee had neither alleged nor made a prima facie showing of a meritorious defense to the name changes. We agree with the chancery court and affirm.

Appellant correctly states that Ark. Stat. Ann. § 34-801 et seq (Repl. 1962) relating to proceedings for change of name, requires no notice and that we said in *Clinton* v. *Morrow,* supra, "We have no statute requiring the consent of both parents to change the name of an infant." Upon those premises, appellant concludes that a father, living separate and apart from a mother, paying no child support, and seldom exercising his bare right of reasonable visitation is entitled to no notice. Appellant also argues that there is no reason for requiring notice to one whose consent is unnecessary and over whose objection the change can be granted.

Little attention need be given the statute, for it is, as we held in *Clinton* v. *Morrow,* supra, merely in affirmation and aid of, and supplementary to, the common law rule that one may ordinarily change his name at will, without any legal proceedings, merely by adopting another name, that the right is not limited by the ordinary rules of minority and that the statute only affords another method of doing so. But the failure of the statute to require notice in a case such as this is no answer to the due process argument. It could, at the most, constitute a legislative determination that notice was not essential to due process, and in the case of the change of name of an adult, it probably would not be. The legislature cannot

dispense with notice, where notice and hearing are necessary to afford constitutional due process. *Sinquefield v. Valentine*, 159 Miss. 144, 132 So. 81, 76 ALR 238 (1931).

It seems clear to us that a natural father has standing to challenge a proposed change of name of his minor child. This right has been widely recognized. See *In re Larson*, 81 Cal. App. 2d 258, 183 P. 2d 688 (1947); *Application of Trower*, 260 Cal. App. 2d 75, 66 Cal. Rptr. 873 (1968) and cases cited. The annotator in an annotation at 53 ALR 2d 914, et seq, has correctly and concisely stated the prevailing rule, viz:

> The courts have generally recognized that the father has a protectible interest in having his child bear the parental surname in accordance with the usual custom, even though the mother may have been awarded custody of the child.

The paternal right has been denominated in various terms. It has been called: a natural right, *West v. Wright*, 263 Md. 297, 283 A. 2d 401 (1971); *Worms v. Worms*, 252 Cal. App. 2d 130, 60 Cal. Rptr. 88 (1967); *DeVorkin v. Foster*, 66 N.Y.S. 2d 54 (1946); *Application of Baldini*, 17 Misc. 2d 195, 183 N.Y.S. 2d 416 (1959); a fundamental right, *Young v. Board of Education of City of N.Y.*, 114 N.Y.S. 2d 693 (1952); a primary or time-honored right, *Application of Shipley*, 26 Misc. 2d 204, 205 N.Y.S. 2d 581 (1960); *Schoenberg v. Schoenberg*, 57 N.Y.S. 2d 283 (1945), aff'd. 59 N.Y.S. 2d 280, aff'd. 296 N.Y.S. 583, 68 N.E. 2d 874; *In re Larson*, supra; a common law right, *Application of Trower*, supra; a protectible interest, *Robinson v. Hansel*, 302 Minn. 34, 223 N.W. 2d 138 (1974); *Ouellette v. Ouellette*, 245 Or. 138, 420 P. 2d 631 (1966); *Ex parte Taylor*, 322 S.W. 2d 309 (Tex. Civ. App., 1959); and even a legal right, *Steinbach v. Steinbach*, 119 N.Y.S. 2d 708 (1953). Although there are jurisdictions in which it has been held that the father's right is not absolute, he is still accorded the right to a hearing and to protection against a change of the name of his minor child in a proper case.

Even if we did not recognize the father's standing to challenge the change of his minor child's name in *Clinton*, we do so now. Regardless of the way in which the father's right may be characterized, we have no hesitation in holding that it

is basic and fundamental that he has a protectible interest in his child's name. The interest has been protected in various ways when a father objects to a change, even by injunction against an informal name change by the mother having custody. See e.g., *Sobel* v. *Sobel,* 46 N.J. Super. 284, 134 A. 2d 598 (1957); *Montandon* v. *Montandon,* 242 Cal. App. 2d 886, 52 Cal. Rptr. 43 (1966); *Kay* v. *Bell,* 95 Ohio App. 520, 121 N.E. 2d 206 (1953); *Application of Hinrichs,* 41 Misc. 2d 422, 246 N.Y.S. 2d 25 (1964); *De Vorkin* v. *Foster,* supra; *Mark* v. *Kahn,* 333 Mass. 517, 131 N.E. 2d 758, 53 ALR 2d 908 (1956).

There is a split of authority on the question whether failure to give a non-custodial father notice of a proceeding to change the name of his minor child violates due process. In Georgia it has been held that it does not. *Fulghum* v. *Paul,* 229 Ga. 463, 192 S.E. 2d 376 (1972). See also, *Laks* v. *Laks,* 25 Ariz. App. 58, 540 P. 2d 1277 (1975). In Texas, it has been held that it does. *Scucchi* v. *Woodruff,* 503 S.W. 2d 356 (Tex. Civ. App., 1973); *Eschrich* v. *Williamson,* 475 S.W. 2d 380 (Tex. Civ. App., 1972). The holding in Texas seems to have resulted, at least in substantial part, from *Armstrong* v. *Manzo,* 380 U.S. 545, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965). In *Armstrong,* it was held that due process of law requires notice of a pending adoption to a non-custodial parent. The United States Supreme Court in that case held that, where the result of the judicial proceeding could permanently deprive a legitimate parent of all that parenthood implies, due process requires notice reasonably calculated to apprise interested parties of the pendency of the action and an opportunity to present their objections. That court said that failure to give the father in that case notice of the pending adoption proceedings violated the most rudimentary requirements of due process. See also, *Olney* v. *Gordon,* 240 Ark. 807, 402 S.W. 2d 651.

The due process clauses of both the Arkansas and United States constitutions afford protection against deprivation of life, liberty or property. Neither an adoption nor a change of name of his child would deprive a divorced father, who does not have custody of the child, of life or liberty or property, if the words are narrowly or strictly construed, in a technical sense, as appellant reads them. Obviously, they were not so construed in *Armstrong.* The right of parenthood

was there recognized as a right protected by the due process clause of the Fourteenth Amendment to the United States constitution. Our due process clause is not significantly different. See Art. 2, § 8, Constitution of Arkansas. But the result reached by the Texas court was not mandated by *Armstrong*, and the Texas court's result was based not only on that case but upon a reading of the Texas constitution's due process clause, the words of which protect privileges and immunities as well as life, liberty and property. The move from *Armstrong* to the Texas position or to the position taken by the trial court requires further analysis. In order to determine whether due process required notice in these cases, we must first consider the nature of the right involved, and then consider whether a right of that nature comes under the "life, liberty or property" umbrella.

The positions of various courts as to names are quite different. There are those taking the position that one's Christian name given him at birth and the surname of his father or patronymic is his legal name. See *Sobel* v. *Sobel*, supra; *Kay* v. *Bell*, supra. See also, *Application of Trower*, 260 Cal. App. 2d 75, 66 Cal. Rptr. 873 (1968). Others say that the succession of the paternal surname is the usual custom. *West* v. *Wright*, 263 Md. 297, 283 A. 2d 401 (1971); *Application of Shipley*, 26 Misc. 2d 204, 205 N.Y.S. 2d 581 (1960).

A name, in addition to furnishing a means of identifying a person, signifies a particular relationship between and among people. *Application of Hinrichs*, 41 Misc. 2d 422, 246 N.Y.S. 2d 25 (1964). The paternal surname tends to identify the relationship between a father and his children, and it matters little whether the name is bestowed as a matter of law or as a matter of centuries-old custom. The courts should not interfere with the usual custom of succession of the parental surname except under circumstances warranting a change for the best interest of the minor. *West* v. *Wright*, supra; *Kay* v. *Kay*, 65 Ohio L. Abs. 472, 51 Ohio Op. 434, 112 N.E. 2d 562 (1953). It has been held that a father may not arbitrarily be deprived of the right to have his children use his surname. *Galenter* v. *Galenter*, 133 N.Y.S. 2d 266 (1954); *In re Application of Seif*, 40 Misc. 2d 596, 243 N.Y.S. 2d 172 (1963). It has also been said that to deprive a child of his father's surname is a

serious and far-reaching action. *Application of Zipper*, 2 A.D. 2d 756, 153 N.Y.S. 2d 282 (1956).

The change of a minor's name so that he no longer bears his father's name has been said to be such a serious matter that it is justified only when it is shown that such a change is required for the welfare of the minor. *Lazow* v. *Lazow*, 147 So. 2d 12 (Fla. App., 1962).

It has been recognized that change of a child's paternal surname may foster an unnatural barrier between father and child and erode a relationship that should be nurtured. *West* v. *Wright*, supra; *Kay* v. *Kay*, supra. Where the parents of a child are divorced and his mother has his custody, the bond between father and child is tenuous at best, and that bond may be weakened if not destroyed by a change of the minor's name. *Mark* v. *Kahn*, 333 Mass. 517, 131 N.E. 2d 758 (1956). It has been said that such a change would lend aid to the estrangement of father and child, contrary to the best interest of the child, and constitute a step toward complete severance of the father-child relationship. *Rounick's Petition*, 47 Pa. D&C 71 (1942); *Application of Shipley*, 26 Misc. 2d 204, 205 N.Y.S. 2d 581 (1960). See also, *Kay* v. *Kay*, supra. Another court has said that allowing a mere custodial parent of a minor to arbitrarily interrupt "the inheritance of a surname is not commensurate with genealogy, history, justice and fairness in the United States." *Montandon* v. *Montandon*, 242 Cal. App. 2d 886, 52 Cal. Rptr. 43 (1966). The threat of erosion, if not complete destruction, of the relationship, to the detriment of the child, has been considered an adequate basis for injunctive relief. *Application of Hinrich*, supra.

An adverse effect upon the relationship of a father and his child has been held to be a valid ground for a father's objection to a change of his minor child's surname and for a court's refusal to make the change. *Lazow* v. *Lazow*, supra; *Application of Shipley*, supra.

It has been held that a father's interests are materially affected by a proceeding to change his child's name, and that a decree changing it is a final determination of the rights of all persons interested. *In re Larson*, 81 Cal. App. 2d 258, 183 P. 2d 688 (1947). This approaches, even though it does not reach,

the permanent deprivation attendant upon adoption.[1] But the step from change of surname, in view of its erosive effect on the parental and filial relationship, may be a short one. Erosion may be destructive, not just damaging. But, before we extend the non-custodial father's protection in adoption, which may be a complete severance of the relationship between father and child, to mere change of surname, which may only tend to erode it, we must decide whether the "life, liberty or property" umbrella gives such extensive coverage. Appellant reads the "due process" clauses of the pertinent constitutions much too narrowly. It has been said of that clause in the Fourteenth Amendment to the federal constitution that it exacts of the states all that is implicit in the concept of ordered liberty. *Wolf* v. *Colorado*, 338 U.S. 25, 69 S. Ct. 1359, 93 L. Ed. 1782 (1949). Elaborating in that case, the court, speaking through Justice Frankfurter, said:

> Due process of law thus conveys neither formal nor fixed nor narrow requirement. It is the compendious expression for all those rights which the courts must enforce because they are basic to our free society. But basic **rights do not become petrified as of any one time, even** though, as a matter of human experience, some may not too rhetorically be called eternal verities. It is of the very nature of a free society to advance in its standards of what is deemed reasonable and right. Representing as it does a living principle, due process is not confined within a permanent catalogue of what may at a given time be deemed the limits or the essentials of fundamental rights.

> To rely on a tidy formula for the easy determination of what is a fundamental right for purposes of legal enforcement may satisfy a longing for certainty but ignores the movement of a free society. It belittles the scale of the conception of due process. The real clue to the problem confronting the judiciary in the application of the Due Process Clause is not to ask where the line is once and for all to be drawn but to recognize that it is for

[1]It appears that proceedings for adoption of these children by their step-father were pending and being resisted by this father at the very time the orders for changes of their names were entered without any notice to him.

the Court to draw it by the gradual and empiric process of "inclusion and exclusion." *****

It has been said that the terms "life," "liberty," and "property" are representative terms and their comprehensive scope embraces "all our liberties, civil, personal and political; in short all that makes life worth living" and that each of these rights "carries with it, as its natural and necessary coincident, all that effectuates and renders complete and full, unrestrained enjoyment of that right." *In re Flukes,* 157 Mo. 125, 57 S.W. 545 (1900). The liberty guaranteed by the Fourteenth Amendment includes the right of the individual to marry, establish a home and bring up children and, generally, to enjoy those privileges long recognized at common law as essential to the pursuit of happiness. *Meyer v. Nebraska,* 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042, 29 ALR 1446 (1923); *Sinquefield v. Valentine,* 159 Miss. 144, 132 So. 81, 76 ALR 238 (1931); *Danforth v. State Department of Health & Welfare,* 303 A. 2d 794 (Me., 1973). See also, *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070, 39 ALR 468 (1924). Clearly the freedom to marry accorded due process protection is basically a personal right. *Loving v. Virginia,* 388 U.S. 1, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967). It has long been recognized that freedom of personal choice in matters of family life is one of the liberties protected by the due process clause of the Fourteenth Amendment. *Cleveland Board of Education v. La Fleur,* 414 U.S. 632, 94 S. Ct. 791, 39 L. Ed. 2d 52 (1974). In the case just cited, the United States Supreme Court brought within the coverage of the clause actions which constituted a heavy burden on the exercise of those freedoms.

It has been said that the guaranty of liberty encompasses many personal freedoms including the right to enjoy domestic relations and the privileges of family and home. *State v. Cromwell,* 72 N.D. 565, 9 N.W. 2d 914 (1943). Parental custodial rights (even of the father of an illegitimate child) come within the protection of the due process clause of the federal and state constitutions. *Stanley v. Illinois,* 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); *Sinquefield v. Valentine,* supra; *Harloe v. Harloe,* 129 W. Va. 1, 38 S.E. 2d 362 (1946). We have indicated that a parent is a necessary party to the appointment of non-parental guardian for custody purposes.

*Bowles* v. *Dixon*, 32 Ark. 92. In discussing the protection of the parental rights by due process of law the United States Supreme Court said in *Stanley*:

> The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and absent a powerful countervailing interest, protection. It is plain that in the interest of a parent in the companionship, care, custody and management of his or her children, "come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements."

A parent's care, custody, management and companionship of his minor children has been called a personal right more precious than property rights. *May* v. *Anderson*, 345 U.S. 528, 73 S. Ct. 840, 97 L. Ed. 1221 (1953).

The due process clause, whether federal or state, is not an enumeration of the rights protected and it must be read in conjunction with other clauses in the same constitution in order to determine its coverage.[2] A clause to be read with the due process clause of the Arkansas Constitution is Art. 1, § 2, recognizing the existence of certain inherent and inalienable rights, among which are those of enjoying life and liberty and pursuing happiness. Another is Art. 2, § 29 prohibiting any construction of Art. 2, in which certain constitutional rights are enumerated to deny or disparage others retained by the people.[3] Of course, our "due process of law" clause is part of Art. 2. Among the inherent and inalienable rights protected, when the scope of "life, liberty or property" is thus measured is the right to establish and maintain a home and family

---

[2]In construction and interpretation of our own constitution and arriving at its intent, meaning, and purpose, or the meaning of any part of it, we have always read it as a whole and its various provisions in the light of each other. *State* v. *Hodges*, 107 Ark. 272, 154 S.W. 506; *Collins* v. *Humphrey*, 181 Ark. 609, 27 S.W. 2d 102; *Hopper* v. *Wolfe*, 238 Ark. 932, 385 S.W. 2d 783; *State* v. *Jones*, 242 Ark. 168, 412 S.W. 2d 284.

[3]We have found the words "life, liberty and property" to be broad enough to protect the right of a prostitute to walk or ride on the streets with a male person over the age of 14 years. *Coker* v. *City of Ft. Smith*, 162 Ark. 567, 258 S.W. 388 (1924).

relations. *Thiede* v. *Town of Scandia Valley*, 217 Minn. 218, 14 N.W. 2d 400 (1944).

Because a change of a child's paternal surname can be such a burden upon an important family relationship we do not hesitate to hold that a father's protectible interest in that respect comes within the coverage of the due process clauses of both the state and federal constitutions.

Appellant's contention that appellee was not entitled to relief, because he did not show a meritorious defense is without merit. *Halliman* v. *Stiles*, 250 Ark. 249, 464 S.W. 2d 573; *Davis* v. *Schimmel*, 252 Ark. 1201, 482 S.W. 2d 785.

The decree is affirmed.

We agree. HARRIS, C.J., and BYRD and HOLT, JJ.