Petitioner Janice Williams and respondent Joe Williams were divorced in February of 1983. By the terms of the divorce decree, Janice was awarded custody of their minor son, Chad, and Joe was given broad visitation rights. That decree, however, contained no geographical restrictions with respect to the residence of the minor child or Janice Williams, the custodial parent. Some of the facts as set out in the opinion rendered by the Court of Civil Appeals, 474 So.2d 705, are as follows:
 "In August 1983, the father learned that the mother had moved to the state of Georgia. Although the child remained in Alabama, the father became concerned that the mother was also going to remove him to Georgia. He petitioned the trial court for a temporary restraining order prohibiting the mother from removing the child from the court's jurisdiction and an order placing temporary custody of the child with the father, pending a hearing on modification of the custody decree. The order was granted [on August 26, 1983]."
The events and proceedings that followed the granting of this order, which included the bringing of kidnapping and contempt charges against Janice Williams, culminated in an order entered January 25, 1984, denying her all visitation rights. Janice Williams appealed to the Court of Civil Appeals, which affirmed the trial court's orders, finding that it had not abused its discretion. Rehearing was denied, and Janice Williams petitioned this Court for a writ of certiorari. We granted the writ pursuant to A.R.A.P., Rule 39 (c)(4), to consider two issues raised by petitioner: First, did the ex parte order entered August 26, 1983, which, without notice or hearing, temporarily modified the prior custody decree, deprive petitioner of her legal rights without due process of law? Second, was there *Page 709 
a showing sufficient to justify the trial court's issuance of the temporary restraining order?
 I. Custody Modification
It is undisputed that by a default judgment of divorce entered February 16, 1983, Janice Williams was given "the general custody and control of the minor child, Chad Dirk Williams," subject to the visitation rights of Joe Williams. Nor is it disputed that this custody decree contained no geographical restrictions whatsoever on the petitioner's residence. Furthermore, it is undisputed that the August 26, 1983, order, "plac[ing] the minor child, Chad Dirk Williams, in the custody of [Joe Williams], pending a hearing," was entered, without notice to petitioner or hearing, based solely "upon the verified Petition of Joe Jackson Williams, alleging that the minor child . . . is about to be removed from the State of Alabama, without permission of the Court or without notice to [Joe Williams]." We find that, on these facts, petitioner's rights to due process were violated.
In Ex parte Shuttleworth, 410 So.2d 896 (Ala. 1981), cert.den., ___ U.S. ___, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984), this Court decided that due process requires that even the parent of an illegitimate child be given notice prior to the revocation of any parental rights which that parent may have. In so holding, one of the cases this Court followed was the leading case of Sinquefield v. Valentine, 159 Miss. 144, 132 So. 81
(1931), Annot., 76 A.L.R. 238 (1932), where
 "it was held that a parent of legitimate children cannot be deprived of their custody without a hearing before a court of competent jurisdiction in which he has been properly served with process, has entered an appearance, and has been allowed an opportunity to appear and be heard." (Emphasis added.) 410 So.2d at 899.
Another case noted at Annot. 76 A.L.R. 238, 254, is Gitsch v.Wight, 61 Utah 175, 211 P. 705 (1922), a case directly in point. In Gitsch, the father had been awarded custody of a minor child by a prior decree. Later, the mother brought an action in district court against the father, seeking custody of their minor child. In her petition, the mother also asked that she be given temporary custody of the child pending a final custody determination. The trial court in Gitsch, without notice to the father and without giving him an opportunity to be heard, entered an order awarding the mother temporary custody of the child pending a final custody hearing, just as did the trial court in the case at bar. In annulling that order awarding temporary custody, the Supreme Court of Utah said:
 "It is difficult to conceive of a state of facts in which such an order as that complained of in this proceeding would be justified, notwithstanding it be conceded that in this class of cases a court may exercise a wide discretion. . . .
". . . .
 "The return of the judge of said court does not deny the allegations of the complaint, nor does it affirmatively allege any facts which in law would constitute a justification for the order depriving plaintiff of the custody of his child without notice or an opportunity to be heard. . . .
". . . .
 ". . . The question goes to the very foundation of judicial proceedings, without which the rights of litigants cannot be judicially determined. That every person has a right to his day in court and an opportunity to be heard before he can be deprived of a justiciable right is too elementary for discussion, much less to invoke the citation of authority.
 "The right of a party to the custody of a child is just as sacred as the right of property. It is admitted in this case that the plaintiff had the custody of the child when its mother filed her petition. . . . The plaintiff was entitled to retain such custody until deprived thereof by due process of law. By what has been said there is no intention on the part of the court to in any manner impugn the motives and intentions of the honorable judge, defendant in the case. It is manifestly *Page 710 
clear that he was inspired by humane motives, believing that it was for the best interests of the child to summarily place it in the custody of its mother. But, however good his intentions, the court had no power to make the order which is challenged in this proceeding." (Emphasis added.) 61 Utah at 177-179, 211 P. at 705-706.
We agree with and adopt that Court's analysis, and hold that, except in certain narrow circumstances hereinafter discussed, a parent having custody of a minor child cannot be deprived of that custody, even temporarily, without being given adequate notice under Rules 4 and 5, A.R.Civ.P., and an opportunity to be heard. See also Danford v. Dupree, 272 Ala. 517, 520,132 So.2d 734, 755 (1961), where this Court said:
 "In dealing with such a delicate and difficult question — the welfare of a minor child — due process of law in legal proceedings should be observed. These settled courses of procedure, as established by our law, include due notice, a hearing or opportunity to be heard before a court of competent jurisdiction. Tillman v. Walters, 214 Ala. 71, 108 So. 62."
Accord, Thorne v. Thorne, 344 So.2d 165 (Ala.Civ.App. 1977), where the Court of Civil Appeals held that due process requires that a parent be given adequate notice that his or her right to custody is to be considered by the court in any given proceedings.
We note that the court in Thorne v. Thorne, supra, cited with approval the case of Ex parte White, 245 Ala. 212, 16 So.2d 500
(1944), in which this Court, in upholding a temporary award of custody to the father which had been granted without notice to the mother, stated:
 "`Ordinarily, a parent's right to the custody of his minor child cannot be cut off except after due notice to the parent and opportunity to be heard. To do so would be to deprive him of his legal rights without due process of law. Due process, however, does not in every case require that the determination of the parent's right to the custody of his child must precede any interference therewith. The child may be taken from his custody provisionally by a summary proceeding, so long as an adequate remedy is available by which the parent may afterward have his rights presented to a proper tribunal. * * *' 39 Am.Jur. 604, § 17." (Emphasis added.) 245 Ala. at 215, 16 So.2d at 503.
At first glance, it may appear that Ex parte White is contrary to our holding in this case. Nevertheless, White, supra, is distinguishable from the case at bar, and, further, the Court of Civil Appeals in Thorne, supra, correctly stated the limitedapplication of the above quoted language from Ex parte White:
 "In the few situations where it appears the actual health and physical well-being of the child are in danger, the court has authority under Ex parte White, supra, to make a temporary grant of custody until a final determination can be made. . . ." (Emphasis added.) 344 So.2d at 171.
We also point out that the parents in Ex parte White were not divorced, but merely separated, and for aught that appears from the opinion, neither parent had been granted custody of the child during the separation by a court order. In other words, in Ex parte White, the order awarding custody to the fatherpendente lite did not have the effect of temporarily modifying
a prior decree awarding custody to the mother. That is not the situation in the case at bar. Janice Williams was awarded custody of her minor son, Chad, by the default judgment of divorce. Furthermore, in his verified complaint, Joe Williams made no allegations of endangerment to Chad's health and physical well-being.
Accordingly, this case being dissimilar to Ex parte White,supra, and not falling within the endangerment exception recognized in Thorne v. Thorne, supra, we hold that the trial court was without the power to issue a temporary order modifying the prior custody decree without giving *Page 711 
petitioner due notice and opportunity to be heard. Therefore, that order is due to be reversed.
Because the order transferring custody must be reversed on due process grounds, we need not reach the merits of respondent's petition for modification of the prior custody decree. However, as guidance to the trial court, in the event there are further proceedings, we cite the case of Cheatham v.Cheatham, 344 So.2d 525 (Ala.Civ.App. 1977), as modified by Exparte McLendon, 455 So.2d 863 (Ala. 1984).
 II. Temporary Restraining Order
Rule 65 (b), A.R.Civ.P., gives the trial court the power to grant a temporary restraining order without notice to the adverse party, but only in limited circumstances. Rule 65 (b), in pertinent part, provides:
 "A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required." (Emphasis added.)
While the trial court is accorded wide discretion in determining whether or not a temporary restraining order should be granted, when such an order is issued without a hearing, a close scrutiny of the existing circumstances under which it is sought should be made by the trial court. Ex parte Purvis,382 So.2d 512 (Ala. 1980); Lorch, Inc. v. Bessemer Mall ShoppingCenter, Inc., 294 Ala. 17, 310 So.2d 872 (1975). Furthermore, this kind of relief cannot be accorded without notice or hearing unless "the verified facts of the complaint clearly justify the petitioner's apprehension about the threat of irreparable injury. See Committee Comments, Rule 65, A.R.C.P."Falk v. Falk, 355 So.2d 722, 725 (Ala.Civ.App. 1978).
Our own close scrutiny of the verified complaint filed by respondent reveals not only that the requirements of Rule 65 (b)(2) were not met, but also that the only "immediate and irreparable injury, loss, or damage" alleged by respondent was a disruption of his visitation rights if the child was taken to Georgia. We find that this allegation falls short of constituting a clear threat of irreparable and immediate injury as required by Rule 65 (b)(2).
In Falk v. Falk, supra, cited by the Court of Civil Appeals in its opinion, the court upheld the granting of a temporary restraining order issued without notice. That case, however, is distinguishable from the present case because in Falk the "husband had set out sufficient facts in his verified petition to show irreparable injury." Falk v. Falk, supra, at 725. Those facts were as follows:
 "The wife, although unmarried, had been living with a married man while she had custody of the two minor children. During this time, the children were not adequately cared for in a suitable environment. This was due mainly to the wife's personal problems and the fact that she lived with a married man who shared no affection for the children. The wife was also presently unable to adequately care for the children and control her own personal problems. This was evidenced by the wife sending the children to the husband several months prior to the husband's visitation period as set by the Cook County decree.
 "Furthermore, the wife had threatened to take the children out of Tuscaloosa County before the summer vacation expired. For the wife to have removed the children from Tuscaloosa County would have been in clear violation of the Cook County decree and, in view of the above, would constitute irreparable injury to the children. Therefore, the fact of insufficient notice does not affect the validity of *Page 712 
the temporary restraining order according to Rule 65 (b)." 355 So.2d at 725.
Clearly, factors such as those presented in Falk warrant the issuance of a temporary restraining order without notice under Rule 65 (b). However, no such compelling factors were allegedin this case. Moreover, "a parent entrusted with the custody of a child has the right, if not restricted by the court, to remove the child from the jurisdiction of the court granting custody." Cheatham, supra, at 527.
Accordingly, we conclude that the trial court abused its discretion in granting the temporary restraining order without notice or hearing.
Since the order entered on August 26, 1983, granting Joe Williams's petition for a temporary restraining order and modification of the former custody decree, is due to be reversed, so, too, it is necessary to reverse the subsequent orders entered September 21, 1983, and January 25, 1984, finding Janice Williams in contempt of the August 26th order and denying her all visitation rights.
For these reasons, we reverse the judgment of the Court of Civil Appeals and remand the case to that court for it to enter an order consistent with this opinion.
REVERSED AND REMANDED.
All the Justices concur.