Thomas H. Hurst and Linda S. Hurst petition this Court for a writ of mandamus directing the Cullman Circuit Court to vacate a temporary restraining order ("TRO") requiring the Hursts to return to Mike Cook and Carrie Cook personal property the Hursts took with them in vacating a residence owned by the Cooks. We grant the petition and issue the writ.
This case arises out of an action filed on January 28, 2005, by Mike Cook and Carrie Cook against the Hursts. The complaint averred that in August 2003 the Cooks, by an oral "arrangement," allowed the Hursts to occupy a house owned by the Cooks and to use the furniture that was in the house. "Over the next several months," according to the complaint, "the [Cooks] contemplated drafting a document to give to the [Hursts] a life estate in the property." However, on December 2, 2004, the Cooks demanded that the Hursts vacate the premises by February 15, 2005. The complaint averred that the Hursts subsequently retained legal counsel, and, on December 6, 2004, recorded an instrument in the Cullman Probate Court purporting to be an agreement between Mike Cook and the Hursts.
The instrument, dated March 10, 2004, stated (1) that the Hursts had Mike Cook's "permission to take possession of and to occupy" the property; (2) that the instrument was the "precursor of a Life Estate Agreement promised by [Mike Cook] to the [Hursts]" to be "issued on or before 6/1/04"; and (3) that "all home furnishings, appliances, i.e., contents of which were left in . . . [the] house by [Mike Cook], are hereby given unconditionally to [the Hursts]." The instrument recited $100 consideration and bore a signature purporting to be that of Mike Cook.
The complaint, however, alleged that the signature of Mike Cook was forged, and it contained a claim alleging slander of title. It also contained a claim alleging conversion of personal property. For these and other claims, the Cooks sought compensatory damages and punitive damages, in addition to an order ejecting the Hursts from the property.
In February 2005, the Hursts began vacating the premises. On February 22, 2005, after the Cooks saw the Hursts leaving the property in a moving van, the Cooks moved for a TRO. The motion stated, in part:
 "During the weekend of February 18, 2005, to February 21, 2005, the [Hursts] continued to remove furnishings from the [Cooks'] home, said furnishings being the same furnishings in question in this lawsuit. Much of the furnishings are family furnishings and are of unique and special value to the [Cooks]. The [Hursts] have also removed the refrigerator from the home."
The motion requested, among other things, that the court order the Hursts "immediately to return, within 72 hours, all of thepersonal property which was removed by the [Hursts] to the [Cooks'] home." (Emphasis added.) Accompanying the motion was an affidavit from the Cooks' counsel, which stated, in pertinent part:
 "I . . . do hereby certify that I have made no effort to give notice for the Temporary Ex Parte Restraining Order to the [Hursts] in this cause. Based upon the information supplied [to me by the Cooks], it is my judgment that notice should not be required in that giving notice would very likely or possibly cause the [Hursts] to take an action to *Page 842 remove the furnishings from the property belonging to the [Cooks]."
(Emphasis added.) That same day, without notice to the Hursts or their counsel, and without requiring the Cooks to post a bond, the trial court granted the motion and entered a TRO. The court scheduled a hearing on March 11, 2005, at which the Hursts were to show cause why a preliminary injunction should not be issued.
On February 23, 2005, the Hursts' counsel requested that the court hold an expedited hearing before the scheduled March 11 hearing. The trial court denied that request. The next day, the Hursts moved to dissolve or modify the TRO. On February 25, 2005, they filed this petition for a writ of mandamus, seeking to vacate the TRO. This Court ordered a response to the petition and stayed the underlying proceedings, including the implementation and enforcement of the TRO. Although the materials filed with this petition do not affirmatively show the disposition of the motion filed by the Hursts in the trial court to dissolve or modify the TRO, the Cooks, in their response to the petition for the writ of mandamus, state that the motion has been denied.
The Hursts assert numerous grounds for the relief they request. First, they contend that the TRO "violates [Ala. R. Civ. P. 65(b)] because it was entered without notice to the Hursts or their attorneys and without just cause for withholding such notice." Petition, at 14-15. Second, they argue that the TRO violated Rule 65(b), because, they say, "it requires the Hursts to comply with its extraordinary directives before having an opportunity under Rule 65 to secure a hearing on their Motion to Dissolve or Modify the order." Petition, at 16. Third, they argue that it improperly "enjoins the Hursts for a period longer than ten days without good cause shown." Petition, at 17. Fourth, "it violates Rule 65(c)," they insist, "because it fails to require the Cooks to post any bond or other security." Petition, at 19. Finally, they contend that the "the Cooks failed to demonstrate imminent and irreparable harm sufficient to justify this type of extraordinary injunctive relief." Petition, at 21-22. Because we conclude that the first ground has merit, we pretermit discussion of the other grounds.
Rule 65(b), Ala. R. Civ. P., provides, in pertinent part:
 "A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required."
(Emphasis added.) "While the trial court is accorded wide discretion in determining whether or not a[TRO] should be granted, when such an order is issued without a hearing, a closescrutiny of the existing circumstances under which it is sought should be made by the trial court." Ex parte Williams,474 So.2d 707, 711 (Ala. 1985) (emphasis added). "Furthermore, this kind of relief cannot be accorded without notice or hearing unless `the verified facts of the complaint [or affidavit]clearly justify the petitioner's apprehension about the threat of irreparable injury.'" Id. (quoting Falk v. Falk,355 So.2d 722, 725 (Ala.Civ.App. 1978) (emphasis added)).
The Cooks' motion for a TRO essentially mirrors the TRO, which compelled the Hursts "to immediately return, within 72 *Page 843 
hours of the [Hursts'] receipt of [the TRO], . . . all of thepersonal property which was removed by the [Hursts] to the [Cooks'] home." (Emphasis added.) The items at the heart of the underlying dispute, according to the complaint and the verified motion for a TRO, had been used by the Hursts as household furnishings, with the Cooks' consent, since 2003, when the Hursts initially occupied the house. Indeed, the Cooks have not been in possession of any of these items since the Hursts moved into the house. Thus, there has been no showing as to why the return of all the disputed items within 72 hours was necessary to avoid the "immediate and irreparable injury, loss, or damage" Rule 65(b) requires for the issuance of a TRO. Nor has there been a certification by the Cooks of a sufficient reason for dispensing with notice.
The affidavit of the Cooks' counsel purporting to justify the extraordinary ex parte relief requested did not identify items of personalty of any particular concern. The reason in the affidavit attempting to justify the absence of notice to the Hursts of the filing of the motion for the TRO, namely, that notice "would very likely or possibly cause the [Hursts] to take an action to remove the furnishings from the property," is unpersuasive. As the Cooks well knew, the Hursts had, in fact, already been moving items from the premises for several days.
In short, the verified facts of the Cooks' motion do not "`clearly justify [the Cooks'] apprehension about the threat of irreparable injury.'" Ex parte Williams, 474 So.2d at 711
(quoting Falk, 355 So.2d at 725 (emphasis added)). Because the trial court exceeded its discretion, we grant the Hursts' petition and direct the trial court to vacate the TRO.
PETITION GRANTED; WRIT ISSUED.
SEE, LYONS, HARWOOD, STUART, SMITH, and PARKER, JJ., concur.
NABERS, C.J., and BOLIN, J., concur in the result.