Rel: June 27, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

### CL-2025-0067

_____

### J.Q.

### v.

### Calhoun County Department of Human Resources

_____

### CL-2025-0068

_____

### T.A.

### v.

### Calhoun County Department of Human Resources

### Appeals from Calhoun Juvenile Court
### (JU-19-771.03)

MOORE, Presiding Judge.

J.Q. ("the father") and T.A. ("the mother") separately appeal from a judgment entered by the Calhoun Juvenile Court ("the juvenile court") terminating their parental rights to A.Q. ("the child"). We reverse the juvenile court's judgment and remand the case for a new trial and for further proceedings consistent with this opinion.

The child was born on May 29, 2019. In 2022, the Calhoun County Department of Human Resources ("DHR") commenced dependency proceedings relating to the child. On August 30, 2022, the juvenile court adjudicated the child to be a dependent child. The juvenile court appointed counsel for each parent in the dependency proceedings. At some point in October or November 2024, the father discharged his court-appointed counsel, and the juvenile court did not appoint replacement counsel for him. The mother's court-appointed counsel represented her in the dependency proceedings until being relieved by a court order entered on November 20, 2024.

On October 2, 2024, DHR filed a petition to terminate the parental rights of the parents to the child. The petition was assigned to the same juvenile-court judge who had presided over the dependency proceedings

2

relating to the child. The record reflects that the parents were served with the termination-of-parental-rights petition on October 8, 2024, while the dependency proceedings remained pending. Along with the petition, the parents were served with a document entitled "Notice of Right to Counsel," which provided, in pertinent part:

> "A parent has the right to representation of an attorney in a dependency or termination of parental rights trial. If the parent is indigent the parent can apply for a Court appointed attorney by completing an Affidavit of Substantial Hardship. Application must be completed promptly and no later than 30 days prior to the trial date. The Affidavit of Substantial Hardship can be obtained at the Calhoun County Courthouse, 24 West 11th Street, Anniston, Alabama at (1) the Clerk's Office on the 5th Floor ... or (2) at Suite 210 on the 2nd floor in the Judicial Assistant's Office ...."

On November 13, 2024, the juvenile court scheduled the trial of the case for January 27, 2025.

The father and the mother appeared on January 27, 2025, the scheduled trial date. The following colloquy occurred at the commencement of the trial proceedings:

> "[The Juvenile Court]: The Court will note that the mother was served with notice of this proceeding on October the 8th, 2024, and that the father ... was served with notice of this proceeding on 10/8/2024.
>
> "The Court will also note that notice of the proceeding provided both parents that they had the right to apply for a

court-appointed attorney, and that if they wish[ed] to do so, they needed to do so immediately. The Court will note that neither parent has made an application for a court-appointed attorney. I assume y'all are waiving that right here today?

"[The mother]: No, ma'am I filled mine out I just I don't know if I got anything back in the mail or not.

"[The Juvenile Court]: You didn't turn it in. You left with it.

"[The mother]: I came back and turned it in the next day.

"[The Juvenile Court]: Well, it never got filed in, ma'am. I don't know who you left it with, but we never saw it. So you do wish to have a court-appointed attorney?

"[The mother]: Yes, ma'am.

"[The Juvenile Court]: All right [father], same question to you. You've been served with notice since October the 8th. Are you waiving your right here today, or do you wish for a court-appointed attorney?

"[The father]: Court-appointed lawyer.

"[The Juvenile Court]: Court-appointed lawyer. We will take a short adjournment then until we can get lawyers down here. Makes no sense to wait until the day of trial to ask for an attorney to be appointed. We'll get somebody down here though."

The record shows that the juvenile court recessed the trial and that the father and the mother each filed an affidavit of substantial hardship establishing their indigency. The juvenile court appointed separate

counsel for the father and the mother. Once the trial proceedings resumed, the appointed counsel for the father and the mother requested a continuance, which the juvenile court denied. The record shows as follows:

> "[The father's counsel]: Your Honor, I would like to make a motion to continue these proceedings if I could, please. I was appointed this morning. I understand that the Court just noted that [the father] didn't fill out a hardship affidavit until today. He's had some transportation issues and things of that nature, and since it is a termination of parental rights case, just to protect his rights, I would request that the Court grant a brief continuance of the trial of this matter.
>
> "[The Juvenile Court]: Response from the State?
>
> "[DHR's counsel]: [The father] was properly served with notice to apply for counsel as soon as possible. In fact, I think that had a time limit on it. That time limit had run. I don't even think he's entitled to counsel today. However, he has been appointed, but I would say, given he has counsel with him today, let's move on.
>
> "[The Juvenile Court]: Okay. And that's my inclination as well, [father's counsel]. I understand it might put you at a little bit of a disadvantage, but it's a disadvantage created by your client.
>
> "[Father's counsel]: Yes, ma'am.
>
> "[The Juvenile Court]: Motion to continue would be denied. Any other motions or stipulations?
>
> "[Mother's counsel]: Judge, the [mother] would have a similar motion.

5

"[The Juvenile Court]: And the same answer for the mother."

After denying the motions for a continuance, the juvenile court conducted a bench trial at which DHR called 10 witnesses and submitted 7 exhibits. The appointed counsel for the father and the mother cross-examined the witnesses and agreed to the introduction of the exhibits without objection. At the conclusion of the trial, the juvenile court indicated that it would grant the petition to terminate the parental rights of the father and of the mother to the child. Later that afternoon, the juvenile court entered a final judgment terminating the parents' parental rights, noting again that the father and the mother did not apply for court-appointed counsel until the trial date. On January 29, 2025, the father filed a postjudgment motion to alter, amend, or vacate the judgment, which the juvenile court denied on January 30, 2025. The father and the mother timely appealed.

On appeal, the father and the mother argue, among other things, that their appointed counsel, having been appointed on the morning of the trial, did not have sufficient time to adequately prepare their defense and that the juvenile court should have continued the trial to assure that they received effective assistance of counsel. The father and the mother

recognize that the juvenile court is vested with sound discretion to deny a motion for a continuance, but they argue that the juvenile court's judgment should be reversed based on the juvenile court's abusing its discretion in this case. See Ex parte H.P.W., 628 So. 2d 514, 517 (Ala. 1993) (holding "that the disposition of a motion for a continuance is vested in the sound discretion of the trial court and that its ruling will not be disturbed on appeal, except upon a clear showing of abuse of discretion"). "A court abuses its discretion when '"it has committed a clear or palpable error, without the correction of which manifest injustice will be done."' Clayton v. State, 244 Ala. 10, 12, 13 So. 2d 420, 422 (1942) (quoting 16 C.J. [Criminal Law, p.] 453 [(1918)])." V.G.J. v. Tuscaloosa Cnty. Dep't of Hum. Res., 368 So. 3d 886, 892 (Ala. Civ. App. 2022).

"The termination of parental rights is a solemn matter that deserves the law's utmost protection." Ex parte E.D., 777 So. 2d 113, 116 (Ala. 2000). In a termination-of-parental-rights proceeding, the fundamental rights of the parents to maintain a relationship with their natural child is at stake. See Santosky v. Kramer, 455 U.S. 745 (1982). In Ex parte Shuttleworth, 410 So. 2d 896, 899 (Ala. 1981), our supreme court recognized that the portentous nature of termination-of-parental-

rights proceedings should require the state to provide appointed counsel to an indigent parent. That right is now codified at Ala. Code 1975, § 12-15-305(b), which provides:

> "In dependency and termination of parental rights cases, the respondent parent, legal guardian, or legal custodian shall be informed of his or her right to be represented by counsel and, if the juvenile court determines that he or she is indigent, counsel shall be appointed where the respondent parent, legal guardian, or legal custodian is unable for financial reasons to retain his or her own counsel."

The obvious purpose of § 12-15-305(b) is to ensure that indigent parents facing termination of their parental rights receive meaningful legal representation. See D.A. v. Calhoun Cnty. Dep't of Hum. Res., 976 So. 2d 502, 505 (Ala. Civ. App. 2007) ("Inherent in that right to legal representation is the right to effective assistance of counsel.").

In this case, the juvenile court appointed counsel for the father and the mother only minutes before the commencement of the trial on the petition to terminate their parental rights. The juvenile court did not appoint the same counsel who had represented the father and the mother in the dependency proceedings; instead, it appointed two new lawyers unfamiliar with the case. The juvenile court did not grant appointed counsel a meaningful opportunity to familiarize themselves with the

facts of the case and the legal issues involved. The appointed counsel certainly did not receive a reasonable amount of time to adequately prepare for the trial. See Payne v. State Dep't of Hum. Res., 532 So. 2d 1263 (Ala. Civ. App. 1988) (holding that a juvenile court abused its discretion in denying a motion to continue a hearing in a child-in-need-of-supervision case in which the child's guardian ad litem was appointed only 3 days before the hearing and had only 45 minutes to review documents the state introduced at the hearing). Our legislature has indicated that termination-of-parental-rights proceedings should be resolved expeditiously so that dependent children can receive permanency. See Ala. Code 1975, § 12-15-320. However, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality," Ungar v. Sarafite, 376 U.S. 575, 589 (1964), and "permanency for a dependent child cannot be achieved through the sacrifice of a parent's right to effective assistance of counsel in a termination-of-parental-rights proceeding." V.G.J., 368 So. 3d at 892.

The juvenile court justified its decision to immediately proceed with the trial by pointing out repeatedly that the father and the mother had

9

not timely applied for appointed counsel. However, § 12-15-305(b) does not specify the procedure a parent must follow to apply for court-appointed counsel in a termination-of-parental-rights proceeding. In J.S. v. J.C., 181 So. 3d 1067 (Ala. Civ. App. 2015), an attorney retained to represent a respondent parent in a termination-of-parental-rights proceeding filed a motion to withdraw, indicating that the parent could not afford to pay him because of his indigency and requesting that the Walker Juvenile Court appoint replacement counsel. The parent did not file an affidavit of substantial hardship or any other formal request to proceed in forma pauperis. This court held that, despite the informalities, the juvenile court was effectively put on notice that the parent was claiming that he was indigent and that it had a duty under § 12-15-305(b) to determine his indigency and appoint counsel.

In this case, the juvenile court had already determined that the father and the mother were indigent and had appointed each of them counsel in the dependency proceedings. At the time of the filing of the termination-of-parental-rights petition on October 2, 2024, both the father and the mother were still represented by appointed counsel in the dependency proceedings because of their ongoing indigency.

10

Nevertheless, along with the termination-of-parental-rights petition, the parents were served with the "Notice of Right to Counsel," which directed the father and the mother to file an affidavit of substantial hardship to again prove their indigency. See J.A.H. v. Calhoun Cnty. Dep't of Hum. Res., 846 So. 2d 1093, 1095 (Ala. Civ. App. 2002) ("[W]e find it unduly burdensome and overly technical to require a parent to repeatedly request the appointment of counsel when he or she has previously requested counsel and has already proven his or her entitlement to such counsel."). Under these particular circumstances, we cannot hold that the failure of the father and the mother to comply with the requirement of the notice to submit new affidavits of substantial hardship should have been fatal to their right to receive effective assistance of counsel.

We find nothing in the record to show that the father and the mother deliberately delayed their requests for appointed counsel for the purpose of hindering the termination-of-parental-rights proceedings or that the motions for a continuance were not made by their appointed counsel in good faith. Given the gravity of the proceedings, the juvenile court should have exercised its discretion to continue the trial to allow the appointed counsel adequate time to prepare.

11

The juvenile court abused its discretion by requiring the father and the mother to proceed to trial with newly appointed counsel on such short notice.  We, therefore, reverse the judgment and remand the case for the juvenile court to conduct a new trial, giving the father and the mother, and their appointed counsel, adequate notice of the new trial date.  See Rule 13(A)(2), Ala. R. Juv. P.  On remand, the juvenile court may also conduct any other proceedings consistent with this opinion.

CL-2025-0067 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2025-0068 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

Edwards, Hanson, Fridy, and Bowden, JJ., concur.